DECISION AND JUDGMENT ENTRY
Westfield Insurance Company ("Westfield") appeals from an order granting partial summary judgment in favor of appellees James Hansberry and Mark Layne on the issue of whether uninsured and underinsured motorist insurance ("UM/UIM") coverage is available on a policy issued to the Ross County Board of Commissioners ("Commissioners"). Westfield raises a single assignment of error for our review:
 "The trial court erred by refusing to recognize a written offer to and rejection of UM/UIM coverage by the Ross County Board of Commissioners where the evidence establishes that the rejection was knowingly and voluntarily made."
We hold that the trial court erred in determining that Westfield failed to make a valid offer of UM/UIM insurance as a matter of law. Accordingly, we reverse and remand for further proceedings.
 I.
Hansberry and Layne were injured in automobile accidents in June 1996 and March 1997, respectively, during the course and scope of their employment with the Commissioners. Hansberry's accident was caused by an underinsured motorist; Layne's was caused by an uninsured motorist. At the time of each accident, the Commissioners held an automobile insurance policy issued by Westfield, under which Hansberry and Layne were defined as insureds.
Hansberry and Layne filed declaratory judgment actions against Westfield in the Ross County Court of Common Pleas, seeking a declaration that UM/UIM coverage was available up to the County's liability limits under the policy. Westfield had denied UM/UIM coverage based on Form AC753, which the Commissioners signed in 1993 in connection with a renewal of the policy. This form signified the Commissioners' intent to reject UM/UIM coverage.
The appellees and Westfield filed motions for summary judgment in the two cases.[1] The trial court consolidated the motions for purposes of briefing and decision. Westfield attached to its motion an affidavit from Ross County Commissioner James M. Caldwell, who also served on the Board of Commissioners when they renewed the insurance policy in question. Caldwell testified that Westfield agent Gary Brenning offered the Commissioners UM/UIM coverage up to $1,000,000, an amount equal to the bodily injury liability limits on the policy, and that the offer was confirmed in writing by Form AC753. Caldwell further testified that the Commissioners understood the nature of UM/UIM coverage, but chose to reject because they "did not want to spend tax dollars for this coverage since Workers Compensation laws already protected County employees injured while employed * * *." Caldwell signed the written rejection statement on the bottom of Form AC753 and returned it to Westfield on August 30, 1993.[2]
Westfield also submitted an affidavit from Brenning that corroborated much of the testimony in Caldwell's affidavit. Brenning stated that he discussed UM/UIM coverage with the Commissioners prior to the 1993 policy renewal and explained their rights to UM/UIM coverage under Ohio law. Following these discussions, the Commissioners indicated they would reject UM/UIM coverage and memorialized that intent by returning the rejection statement (signed by Caldwell) contained in Form AC753.
After considering the motions and affidavits, the trial court denied Westfield's motion and granted the appellees' motion. The court held that Form AC753 was not an express written offer of UM/UIM coverage. In the absence of a written offer, UM/UIM coverage existed by operation of law. See Gyori v. Johnston Coca-Cola Bottling Group, Inc. (1996),76 Ohio St.3d 565. The court did not address whether the Commissioners rejected coverage because, based on Gyori, there could be no rejection without an offer being made first. See id. at 568. Westfield then commenced these appeals, which we sua sponte consolidated for consideration and decision.
 II.
In its only assignment of error, Westfield argues that the trial court erroneously granted partial summary judgment in favor of the appellees. By finding that Westfield failed to offer UM/UIM coverage to the Commissioners, the court determined that such coverage was available to the appellees by operation of law. Westfield claims that it made an adequate written offer of UM/UIM coverage, which the Commissioners rejected well before the appellees' accidents.
We review a trial court's decision to grant summary judgment on a denovo basis. Evans v. S. Ohio Med. Ctr. (1995), 103 Ohio App.3d 250, 253;Koos v. Cen. Ohio Cellular, Inc. (1994), 94 Ohio App.3d 579, 588. A trial court correctly grants summary judgment only if: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) construing the evidence in a light most favorable to the non-moving party, reasonable minds can come to a conclusion only in favor of the moving party. Bostic v. Connor (1988),37 Ohio St.3d 144, 146.
It is well-settled that R.C. 3937.18 (A) requires insurance companies to offer UM/UIM coverage with every automobile liability policy issued in Ohio. Gyori, 76 Ohio St.3d at 567. An insurer's failure to do so results in the insured acquiring UM/UIM coverage by operation of law. Id.
See, also, Abate v. Pioneer Mut. Cas. Co. (1970), 22 Ohio St.2d 161,163. UM/UIM coverage may be eliminated from a vehicle insurance policy only by an express and knowing rejection of such coverage. Id. In Gyori, the Supreme Court amplified this rule by holding that the rejection must be in writing and received by the insurer prior to the commencement of the policy year. Gyori at paragraph two of the syllabus. Gyori also amplified the "offer" requirement of R.C. 3937.18 (A) by holding that the offer of UM/UIM coverage must also be in writing. Id. at paragraph one of the syllabus.
Westfield contends that Form AC753, which was signed by the Commissioners in 1993, suffices as the valid "written offer" of UM/UIM coverage required by Gyori.[3] The trial court, however, agreed with the appellees' contention that Form AC753 lacked sufficient detail to qualify as a valid written offer of UM/UIM coverage. Specifically, the trial court cited Form AC 753's failure to disclose (1) that R.C. 3937.18
requires an offer of UM/UIM coverage to be equal to the amount of liability coverage and (2) what the cost of UM/UIM coverage would be. In focusing solely on the four corners of Form AC 753, the trial court rejected the notion that the Commissioners' discussions with Westfield's insurance agent could supplement the terms of a written offer. Although the appellees encourage us to follow the trial court's reasoning, we decline to do so.
The burden of establishing an offer of UM/UIM coverage lies with the insurer. See Minitier v. Continental Ins. Co. (July 25, 1995), Franklin App. No. 94APE12-1820, unreported.[4] To be valid, an offer of UM/UIM coverage must be made in such a way that the insured understands that such coverage is available and can then make a decision to accept or reject coverage. Abate v. Pioneer Mutual Cas. Co. (1969), 18 Ohio App.2d 73,75-76, affirmed (1970), 22 Ohio St.2d 161. Form AC753's "offer" states:
 "Section 3937.18 of the Ohio Revised Code currently requires that all policies include Uninsured Motorists Insurance and Underinsured Motorists Insurance at limits equal to the Bodily Injury Limits carried on the policy. [¶] However, other options of limits or rejection of all coverages are available. "
This language is at the top of the form, followed by sections allowing the insured to opt for lower limits or reject all UM/UIM coverage. The form thus indicates that UM/UIM coverage is available to the insured and required by law. Further, the affidavits submitted as summary judgment evidence indicate that Westfield's agent and the Commissioners had detailed discussions regarding UM/UIM coverage that supplemented Form AC753.
The appellees argue that a more "detailed" written offer is needed to satisfy Gyori. The appellees submit that the written offer, in addition to being "clear and conspicuous," must include: (1) a description of UM/UIM coverage; (2) the cost of UM/UIM coverage; (3) the specific liability limits of the policy. Appellees' Brief at 6. The appellees further state that these requirements are necessitated by the "controlling standards set by Gyori and its progeny * * *." Id. The appellees' position, however, is unsupported by the authorities upon which they rely.
The appellees assume that Gyori requires all aspects of the UM/UIM offer to be included in the writing itself. Gyori itself, however, suggested otherwise. In that case, the Supreme Court analyzed whether UM/UIM coverage existed under a policy issued by National Union Insurance Company and a separate policy issued by Lumbermens Mutual Casualty Company. The court first analyzed the National Union policy and noted that the insured attempted to reject UM/UIM coverage. Gyori,76 Ohio St.3d at 568. Because National Union never made a formal offer of UM/UIM coverage in writing, however, the court ruled that the insured's rejection could have no legal significance. Id. The court then analyzed whether the insured validly rejected UM/UIM coverage related to the Lumbermens policy. The court expressly found that Lumbermens had offered UM/UIM coverage "because it discussed UM coverage with Johnston and attached to it a proposal that allowed Johnston to accept or reject UM coverage." Id. (Emphasis added.) The court ultimately held that UM/UIM coverage existed by operation of law because the insured failed to return its rejection prior to the commencement of the policy period. Id.
at 568-69 and paragraph two of the syllabus. However, the court's emphasis on an agent's discussion of UM/UIM coverage with an insured appears to recognize that a written offer of UM/UIM coverage may be supplemented by oral representations by the insurer. Accord Remington v.Triplett (June 30, 1999), Fairfield App. No. 98CA00070, unreported (concluding that a written "option selection form" was an offer, particularly when viewed in conjunction with discussions between the insurance agent and the insured).
The appellees rely principally on two cases from the Seventh Appellate District in support of their position that a "detailed offer" of UM/UIM coverage is required by R.C. 3937.18 (A), notwithstanding oral discussions between an insurer and the insured. Neither of these cases is persuasive because neither one of them squarely stands for the proposition forwarded by the appellees.
In Weddle v. Hayes (Sept. 5, 1997), Belmont App. No. 96-BA-44, unreported, the Seventh District reviewed a trial court's grant of summary judgment against Westfield in a case involving an alleged waiver of UM/UIM coverage equal to liability limits. Westfield argued that the insured opted for lower limits of UM/UIM coverage by signing an acknowledgement on the insurance application that was similar to Form AC753. The Seventh District upheld the trial court's determination that the insured was entitled to UM/UIM coverage in an amount equal to the liability limits. The court held:
 "The language in the provisions in question are not `clear and conspicuous'. The alleged waiver in question does not clearly state that UM/UIM limits are required by law to be equal to liability limits unless otherwise requested. Nor does it clearly and conspicuously inform the consumer of what UM/UIM limits are to be equal to. The statement reads that UM/UIM liability limits are to be equal to those provided for `bodily injury'. This statement does not
identify what `bodily injury' coverage UM/UIM is to be equal to, nor where to find such `bodily injury' coverage to make such a comparison."
Id. (Emphasis sic.) A scrupulous reading of this rationale reveals that the court did not hold that no valid offer of UM/UIM coverage was made. Rather, the Weddle court decided that there was no express and knowingrejection of UM/UIM coverage. The Weddle court did not foreclose the possibility that a document such as Form AC753 could constitute a valid offer within the meaning of Gyori. Further, unlike in this case, there was no indication in Weddle that the insurer and insured had detailed discussions about UM/UIM coverage that could have helped establish the validity of an offer and rejection.
The appellees also rely on Gibson v. Westfield National Ins. Co. (July 14, 1998), Monroe App. No. 788, unreported, discretionary appeal not allowed (1998), 85 Ohio St.3d 1411, in support of their contention that Form AC753 does not constitute a valid written offer of UM/UIM coverage. This case does not, however, make as broad a holding as they suggest. InGibson, the Seventh District reviewed a case involving Westfield's AC753 form. The trial court granted summary judgment in favor of an insured, finding that no offer of UIM insurance coverage was ever made. On appeal, the Seventh District correctly recognized the distinction between an analysis of an "offer" of UIM insurance and a "rejection" of that coverage. Before it could analyze whether the insured expressly rejected UIM coverage, the Gibson court recognized the necessity of addressing the "threshold issue" of whether Westfield made an offer of UIM coverage in an amount equal to the policy's liability limits. Id. In addressing this "threshold issue," the court noted that Westfield failed to establish that it offered UIM coverage. Gibson did not expressly hold, however, that the AC753 form was required to carry the terms suggested by the appellees in this case. In fact, the court described the lack of a written offer in terms of what the insurance agent discussed and failed to discuss with the insured. See id. Thus, the Gibson court implicitly accepted the notion that the AC753 form could suffice as a written offer if accompanied by appropriate supplemental discussions.
After the Gibson court concluded that Westfield did not make a valid offer of UM/UIM coverage, it proceeded to discuss the shortcomings of Form AC753. The court relied heavily upon Weddle to decide that the insured did not make a voluntary and informed rejection of UM/UIM coverage. The court specifically noted that Form AC753 contained no reference "to the specific liability coverage or where to find that amount to make a comparison." Id. The court further noted that:
 "[T]he language regarding R.C. 3937.18 is not clear and conspicuous. It does not clearly state that the law mandates the uninsured and underinsured coverage equal to that of liability coverage. It also fails to state the amount of the bodily injury limits or where to find them. Where terminology in an insurance contract is ambiguous, the ambiguity must be construed strictly against the insurer and liberally in favor of the insured * * *."
Id. Just as in Weddle, however, the cited shortcomings of the waiver form suggest what information is needed before an insured can make a valid rejection of UM/UIM coverage. Thus, Gibson and Weddle stand for the proposition that an insured must have knowledge of certain terms (such as those suggested by the appellees) before a knowing rejection can be made. These cases do not, however, dictate what language must be included in the written offer. In other words, the failure of an insurer to inform an insured of certain details (e.g., the cost of UM/UIM coverage, the coverage limits, and a description of UM/UIM coverage) may prevent a finding of a valid rejection. But the lack of these details in the written offer will not prevent a court from finding a valid offer in the first instance.
In this case, the A0753 form, coupled with the affidavits submitted as summary judgment evidence, establish that a written offer of UM/UIM coverage was made. The Caldwell and Brenning affidavits state unequivocally that that UM/UIM coverage was offered in an amount equal to the $1,000,000 limits of the Commissioners' policy, that the Commissioners understood what UM/UIM coverage was, and that the Commissioners understood the consequences of rejecting UM/UIM coverage. Thus, there were oral discussions that supplemented Form AC753. Caldwell's affidavit also establishes that the Commissioners viewed Form AC753 as a written documentation of the offer of UM/UIM coverage given by Westfield. Based on these factors, we conclude that Westfield complied with the written offer requirement of Gyori in this case. The additional details suggested by the appellees would be relevant to whether a knowing rejection was made, but their absence in Form AC753 does not lead to a conclusion that no valid offer was made as a matter of law.
A substantial argument also exists that the "detailed offer" prayed for by the appellees is not supported by R.C. 3937.18 (A)'s legislative intent. Former R.C. 3937.181, which was repealed effective June 23, 1982, was a predecessor to R.C. 3937.18 (A) that dealt solely with underinsured motorist (UIM) coverage. The statute stated in part:
 "Each automobile liability or motor vehicle liability insurance company that provides uninsured motorist coverage under section 3937.18 of the Revised Code shall offer underinsured motorist coverage as optional protection, up to the limits of the uninsured motorist coverage * * *.
 "Each such insurance company shall provide information * * * as to the type and cost of protection available under underinsured motorist coverage and permit such applicants and renewal policyholders to exercise the option to purchase such coverage."
Blohm v. Cincinnati Insurance Co. (1988), 39 Ohio St.3d 63, 64-65
(emphasis sic). Thus, former R.C. 3937.181 (B) appeared to describe the necessary terms of an offer of UIM coverage. In Blohm, the Supreme Court found a valid offer of UIM coverage because the endorsement at issue in that case contained all of the elements described by both the statute and Ohio Adm. Code 3901-1-39.
When the General Assembly repealed former R.C. 3937.181 (B), it also amended R.C. 3937.18 (A) to mandate an offer of underinsured motorist coverage. See Blohm at 65, fn. 1. The amendment is reflected at R.C. 3937.18
(A)(2). This statute does not, however, state that an offer of UIM coverage must contain the same details that had been required by former R.C. 3937.181 (B). The legislature did not carry over the "detailed offer" language of former R.C. 3937.181 (B) into its amendment of R.C.3937.18 (A). Thus, what was once expressly required of an offer of UIM coverage is no longer mandated by the current statutory language. If the General Assembly had intended to require certain details when it made the offer of UIM coverage mandatory, it could have easily carried over the language of former R.C. 3937.181.
In rejecting the trial court's conclusion, we are mindful that a detailed offer of UM/UIM coverage would have obvious benefits. A detailed offer would avoid many disputes over what oral discussions did or did not take place to supplement a written offer. This would be especially beneficial in situations where the insured, unlike the Commissioners in this case, is not a sophisticated insurance customer who claims to understand the nature of UM/UIM insurance coverage. Nevertheless, we are hesitant to impose stringent requirements on the contents of a written offer, particularly in light of the unique nature of the "offer" of UM/UIM coverage required by R.C. 3937.18 (A). An insured is deemed to have UM/UIM coverage by operation of law unless he or she expressly rejects the offer of such coverage. See Gyori, supra, at 567. Thus, an insured need not formally accept an offer of UM/UIM coverage equal to a policy's liability limits before it is deemed to exist by operation of law. An "offer" of UM/UIM coverage is therefore not an offer in the ordinary sense because its purpose is not necessarily to invite acceptance. Cf. McSweeney v. Jackson (1996),117 Ohio App.3d 623, 631-32 (defining "offer" as a manifestation of willingness to enter into a bargain, justifying another person in understanding that "his assent to that bargain is invited and will conclude it"). Because an insured is deemed to have UM/UIM coverage equal to liability limits without formal acceptance, the insurer's "offer" is nothing more than an offer of the opportunity to reject such coverage. The details insisted upon by the appellees are therefore more appropriate to a determination whether an insured's rejection is valid rather than the determination whether the written "offer" was properly made. Further, an insurer already bears the burden of showing that any rejection of UM/UIM coverage was knowingly made by a customer. Gyori at 567-68, citing Ady v. W. Am. Ins. Co. (1982), 69 Ohio St.2d 593, 597. Thus, an insurer already has an incentive to convey certain details about UM/UIM coverage to the insured, including those details insisted upon by the appellees, to ensure that a valid rejection is made. We therefore see no significant reason for imposing new requirements on the written offer, particularly when Gyori strongly implied that those requirements were unnecessary.
We conclude that the trial court erred in finding that Westfield failed to make a written offer of UM/UIM coverage to the Commissioners as a matter of law. Accordingly, we reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.[5]
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE REVERSED AND CAUSE REMANDED and that Appellant recover of Appellees costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Ross County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Kline, P.J. Abele, J.: Concur in Judgment Opinion
 ________________________ William H. Harsha, Judge
[1] The appellees' motion was for partial summary judgment on the issue of whether the commissioners' insurance policy with Westfield provided UM/UIM coverage.
[2] The rejection purported to take effect on August 3, 1993, i.e.
retroactive to the date Caldwell signed it. For the reasons given in footnote 5, infra, we decline to address the issue of whether this rendered the rejection invalid.
[3] The parties do not dispute that the Commissioners signed Form Ac753 in connection with a renewal policy in 1993. Neither party questions the necessity of a written offer in connection with the 1993 policy for which the Commissioners signed Form AC 753. The parties agree that the relevant "offer" and "rejection" of UM/UIM coverage is the AC753 form signed by the Commissioners in connection with the 1993 policy renewal. Thus, we assume without deciding that the AC753 form signed in 1993 was the relevant "offer" of UM/UIM coverage.
[4] The current version of R.C. 3937.18 (C) states that a written, signed rejection of UM/UIM coverage "shall create a presumption of an offer of coverages consistent with division (A) of this section * * *." The amendment adding this provision took effect on September 3, 1997, and is therefore inapplicable to the policy at issue in this case. See, generally, Ross v. Farmers Ins. Group of Cos. (1998), 82 Ohio St.3d 281
(statutory law at time of contracting governs the policy)
[5] In the briefs to this court, each of the parties urged us to reach issues concerning the validity of the Commissioners' rejection of UM/UIM coverage in the event we found that Westfield made a valid written offer of UM/UIM coverage. We decline to do so. The trial court never reached the question of whether the Commissioners validly rejected UM/UIM coverage in connection with the 1993 renewal policy; it rested its decision solely on the basis that Westfield's AC 753 form did not constitute a written offer. Because the trial court never examined the issue, we are unable to do so. See Murphy v. Reynoldsburg
(1992), 65 Ohio St.3d 356, 360.
(Hansberry Layne v. Westfield Ins. Co.)