[This opinion has been published in *Ohio Official Reports* at 76 Ohio St.3d 565.]

GYORI, APPELLANT, *v*. JOHNSTON COCA-COLA BOTTLING GROUP, INC. ET AL.,
APPELLEES.

[Cite as *Gyori v. Johnston Coca-Cola Bottling Group, Inc*., 1996-Ohio-358.]

*Insurance—Motor vehicles—Uninsured motorist coverage—For a rejection of uninsured motorist coverage to be expressly and knowingly made, such rejection must be in writing and must be received by the insurance company prior to the commencement of the policy year.*

1. There can be no rejection pursuant to R.C. 3937.18(C) absent a written offer of uninsured motorist coverage from the insurance provider.

2. In order for a rejection of uninsured motorist coverage to be expressly and knowingly made, such rejection must be in writing and must be received by the insurance company prior to the commencement of the policy year.

(No. 95-1139—Submitted May 21, 1996—Decided October 2, 1996.)

APPEAL from the Court of Appeals for Lucas County, No. L-94-078.

————————

{¶ 1} On December 12, 1990, Robert E. Gyori, Jr., appellant, was injured in an automobile accident caused by the negligence of an uninsured motorist. At the time of the accident, Gyori was driving an automobile that was owned and insured by his employer, Johnston Coca-Cola Bottling Group, Inc. ("Johnston"). Gyori had been told by Johnston that it had full coverage through various business automobile insurance policies.

{¶ 2} Johnston had primary automobile liability insurance with appellee Lumbermens Mutual Casualty Company ("Lumbermens"), Policy No. 3ZL 462 410-01, running from November 1, 1990 through November 1, 1991 in the amount of $1 million per accident. Johnston also had additional liability coverage with appellee National Union Fire Insurance Company of Pittsburgh, Pennsylvania

("National Union"), Policy No. BE 205-79-18, running from November 1, 1990 through November 1, 1991 in the amount of $15 million per accident.

{¶ 3} Gyori filed timely claims seeking uninsured motorist ("UM") benefits with both Lumbermens and National Union. His claims were rejected based on each insurance company's belief that its insured, Johnston, had expressly rejected, and therefore did not have, uninsured motorist coverage at the time of the accident. See R.C. 3937.18.

{¶ 4} John Rains, Risk Manager for Johnston and the person primarily responsible for procuring the insurance with Lumbermens, had a policy of rejecting UM coverage when it was legally possible to do so. The specifications sent to Lumbermens indicated that Johnston wanted to reject UM coverage wherever possible and to obtain the statutory minimum where rejection is prohibited by law. Both Patricia Garry, a Senior Underwriter at Lumbermens, and Rains knew this to mean that Rains was seeking the minimum UM coverage allowed by law.

{¶ 5} The proposal received from Lumbermens was consistent with the specifications and therefore did not include UM coverage for Ohio. A form to signify the acceptance or rejection of UM coverage was attached to the proposal.[1] The proposal was accepted as presented and the policy went into effect without UM coverage in Ohio.

{¶ 6} Rains also represented Johnston during negotiations with National Union. He submitted specifications to National Union indicating that Johnston did not want UM coverage in those states which permitted rejection of such coverage. A policy based on these specifications was prepared. Johnston accepted the policy, which went into effect without UM coverage in Ohio.

---

1. This form was not returned to Lumbermens until January 1991.

{¶ 7} This action commenced when Gyori filed a declaratory judgment action seeking a declaration of his rights under the policies.[2] Gyori, Lumbermens and National Union filed motions for summary judgment. The trial court denied Gyori's motion and granted those of Lumbermens and National Union upon finding that Johnston had expressly rejected UM coverage for both policies and therefore did not have such coverage at the time of Gyori's accident. See R.C. 3937.18. The court of appeals affirmed this decision, stating that "[t]he undisputed facts *** amply demonstrate that Johnston was well aware of the availability of UM coverage, understood it and made an informed and knowledgeable waiver of that coverage."

{¶ 8} The cause is now before this court pursuant to the allowance of a discretionary appeal.

_____

*Brown, Schlageter, Craig & Shindler*, *Martin J. Holmes* and *Scott A. Winckowski,* for appellant.

*Shumaker, Loop & Kendrick* and *Michael G. Sanderson,* for appellee, Lumbermens Mutual Casualty Company.

*Janik & Dunn*, *Steven G. Janik* and *Richard J. Zielinski,* for appellee, National Union Fire Insurance Company.

_____

**PFEIFER, J.**

{¶ 9} The issues in this case are straightforward. Did Lumbermens offer UM coverage to Johnston? If so, did Johnston reject the coverage? Did National Union offer UM coverage to Johnston? If so, did Johnston reject the coverage?

---

2. Johnston and certain insurance companies that provided excess liability coverage were defendants in the original action. The other carriers of excess coverage were dismissed upon the completion of discovery. Gyori reached a settlement with Johnston. Thus, only Lumbermens and National Union are party to this appeal.

For the reasons that follow, we find that National Union did not offer UM coverage and that therefore Johnston could not reject the coverage. We also find that Lumbermens offered UM coverage and that Johnston did not expressly reject the offer.

{¶ 10} It is well settled that insurance companies must offer UM coverage with every automobile liability or motor vehicle liability policy delivered or issued in this state. R.C. 3937.18(A). Failure to do so results in the insured acquiring UM coverage by operation of law. *Abate v. Pioneer Mut. Cas. Co.* (1970), 22 Ohio St.2d 161, 163, 51 O.O.2d 229, 230, 258 N.E.2d 429, 431. The purpose of the requirement is "to protect persons injured in automobile accidents from losses which, because of the tort-feasor's lack of liability coverage, would otherwise go uncompensated." *Id.* at 165, 51 O.O.2d at 231, 258 N.E.2d at 432. See, also, *Martin v. Midwestern Group Ins. Co.* (1994), 70 Ohio St.3d 478, 480, 639 N.E.2d 438, 446. "Given this express statutory purpose, *** the uninsured motorist statute should be construed liberally in order to effectuate the legislative purpose that coverage be provided to persons injured through the acts of uninsured motorists." *Curran v. State Auto. Mut. Ins. Co.* (1971), 25 Ohio St.2d 33, 38, 54 O.O.2d 166, 169, 266 N.E.2d 566, 569. See, also, *Martin,* 70 Ohio St.3d at 480, 639 N.E.2d at 440. Against this background, we have long held that rejection of UM coverage must be made expressly and knowingly. R.C. 3937.18(C); *Abate,* 22 Ohio St.2d 161, 51 O.O.2d 229, 258 N.E.2d 429, paragraph one of the syllabus; *Ady v. W. Am. Ins. Co.* (1982), 69 Ohio St.2d 593, 597, 23 O.O.3d 495, 498, 433 N.E.2d 547, 549-550. Further, insurance companies bear "the burden of showing that any rejection was knowingly made by the customer." *Id.* at 597, 23 O.O.3d at 498, 433 N.E.2d at 549.

{¶ 11} We look first at the policy Johnston had with its excess liability provider, National Union. The mandates of R.C. 3937.18 apply to providers of excess coverage as well as providers of primary liability coverage. *Duriak v. Globe*

4

*Am. Cas. Co.* (1986), 28 Ohio St.3d 70, 72, 28 OBR 168, 170, 502 N.E.2d 620, 622. The trial court and court of appeals found that National Union did not offer UM coverage to Johnston; we affirm that finding.

{¶ 12} According to R.C. 3937.18 and the case law of this state, there is only one way to avoid the requirement that UM coverage be provided—an express, knowing rejection of UM coverage by the customer. *Abate,* 22 Ohio St.2d 161, 51 O.O.2d 229, 258 N.E.2d 429, paragraph one of the syllabus; *Ady*, 69 Ohio St.2d at 597, 23 O.O.3d at 498, 433 N.E.2d at 549. In this case, however express and knowing Johnston's actions were, they could not constitute a rejection because there was no offer made which Johnston could reject.[3]

{¶ 13} R.C. 3937.18 does not specifically require the offer of UM coverage to be in writing. We believe that the spirit of R.C. 3937.18 is best served by requiring the offer to be in writing. Such a requirement will prevent needless litigation about whether the insurance company offered UM coverage and will in the long run benefit insurance companies. After all, they bear the burden of proof with respect to rejection. *Ady* at 597, 23 O.O3d at 498, 433 N.E.2d at 549. They also bear the cost of a misunderstanding that results in the provision of UM coverage by operation of law.

{¶ 14} Accordingly, we hold that there can be no rejection pursuant to R.C. 3937.18(C) absent a written offer of UM coverage from the insurance provider. See *Scelza v. Employers Mut. Liab. Ins.* (1994), 68 Ohio St.3d 1208, 1209, 624 N.E.2d 1059, 1060 (F.E. Sweeney, J., dissenting). As there was no written offer in this case, we find that Johnston acquired UM coverage from National Union by operation of law at the commencement of the policy year in question. We reverse

---

3. It is axiomatic that an offer must precede a "rejection"; otherwise the "rejection" has no legal significance.

the judgment of the court of appeals and remand the cause to the trial court for further proceedings consistent with this opinion.

{¶ 15} We turn now to the policy Johnston had with its primary liability insurance provider, Lumbermens. We find that Lumbermens offered UM coverage to Johnston because it had discussed UM coverage with Johnston and attached to its proposal a form that allowed Johnston to accept or reject UM coverage. Johnston rejected UM coverage on this form. However, the form was not returned to Lumbermens until January 11, 1991, more than two months after the effective date of the policy and one month after Gyori's accident. To allow Johnston to reject UM coverage after an accident would invite fraud and misrepresentation by corporate officers seeking low insurance rates. While there is no suggestion of such conduct in this case, it is a danger that must not be encouraged.

{¶ 16} The reasoning that led to our holding above (requiring offers of UM coverage to be in writing) necessitates the same requirement for rejections. Such a requirement will lessen the difficulty of proving rejection in a case such as this. We are persuaded that requiring rejection of UM coverage to be in writing comports with the spirit of R.C. 3937.18 and with public policy.

{¶ 17} Accordingly, we hold that in order for a rejection of UM coverage to be expressly and knowingly made, such rejection must be in writing and must be received by the insurance company prior to the commencement of the policy year. Thus, in the case before us, we hold that Johnston had UM coverage by operation of law pursuant to R.C. 3937.18. We reverse the judgment of the court of appeals and remand the cause to the trial court for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

DOUGLAS, RESNICK AND F.E. SWEENEY, JJ., concur.

MOYER, C.J., COOK AND STRATTON, JJ., dissents.

---

**COOK, J., dissenting.**

{¶ 18} I respectfully dissent. Nowhere in the language of R.C. 3937.18 is there a requirement that the insured receive a written offer of UM coverage before an express rejection of UM coverage becomes effective. Further, that statute does not require a written express rejection of UM coverage. That the rejection evidence may be controverted is not a reason to impose requirements that are not statutorily supported.

{¶ 19} This is a case where a sophisticated commercial buyer actively sought to minimize its insurance costs by making a knowing and express anticipatory rejection of UM coverage. Consistent with company policy, Johnston's Risk Manager, John Rains, enlisted its insurance broker, Rollins Burdick Hunter of Illinois, Inc., to create bid specifications for insurance rejecting UM coverage where lawful and otherwise opting for the minimum UM coverage permitted. In creating the specifications, Rollins discussed with Rains the coverages available, including UM coverage. Rollins then shopped these specifications to find the best price. Both Lumbermens and National Union issued proposals consistent with the bid specifications.

{¶ 20} In order for a rejection of UM coverage to be effective, we have required that it be made expressly and knowingly. *Abate v. Pioneer Mut. Cas. Co.* (1970), 22 Ohio St.2d 161, 51 O.O.2d 229, 258 N.E.2d 429, paragraph one of the syllabus; *Ady v. W. Am. Ins. Co.* (1982), 69 Ohio St.2d 593, 597, 23 O.O.3d 495, 498, 433 N.E.2d 547, 549-550; R.C. 3937.18(C). While in relation to the average household consumer this more often than not will require an insurance carrier to tender a formal offer explaining the statutory offering requirements and other available options, the same does not hold true for the sophisticated insurance purchaser who solicits bid proposals excluding UM coverage.

**{¶ 21}** With respect to R.C. 3937.18, insurance companies bear "the burden of showing that any rejection was knowingly made by the customer." *Ady* at 597, 23 O.O.3d at 498, 433 N.E.2d at 549. In satisfying this burden, the insurance company must show that the customer was aware of the mandatory UM offering, understood the terms to be provided under that offering and expressly rejected UM coverage. See *id.* Where the insurance company can demonstrate that a formal offering was not required to impart to its customer the requisite knowledge concerning UM coverage, failure to formalize an offer in the face of specifications that plainly decline that coverage should not dictate coverage by default. That is exactly the result in the case *sub judice* where the majority states that "however express and knowing Johnston's actions were, they could not constitute a rejection because there was no offer made which Johnston could reject."

**{¶ 22}** This court need not judicially impose further extrastatutory requirements upon insurers in order to effectuate the spirit of R.C. 3937.18. We have already construed that statute to require a knowing and express waiver in order for an insurance company to avoid UM coverage. Moreover, whether the waiver is made knowingly and expressly is an issue of fact that the insurance company bears the burden of proving. See *Abate,* 22 Ohio St.2d 161, 51 O.O.2d 229, 258 N.E.2d 429. Where, as here, the facts are undisputed that a customer is aware of UM coverage, understands it and makes an informed and knowledgeable waiver of that coverage, there is no reason to judicially mandate that the waiver be preceded by a written offer of UM coverage and a written rejection. Accordingly, I would affirm the appellate court's judgment.

MOYER, C.J., and STRATTON, J., concur in the foregoing dissenting opinion.

—————————————