[This opinion has been published in *Ohio Official Reports* at 90 Ohio St.3d 445.]

**LINKO, EXR., *v*. INDEMNITY INSURANCE COMPANY OF NORTH AMERICA.**

**[Cite as *Linko v. Indemn. Ins. Co. of N. Am.*, 2000-Ohio-92.]**

*Insurance—Motor vehicles—Uninsured/underinsured motorist coverage—What constitutes an express and knowing rejection of uninsured/underinsured motorist coverage by a corporation on behalf of related corporations and other insureds.*

(No. 99-2293—Submitted June 7, 2000—Decided December 27, 2000.)

ON ORDER CERTIFYING A QUESTION OF STATE LAW from the United States District Court for the Western District of New York, No. 98-CV-129S.

———————————

{¶ 1} The underlying action for a declaration of rights involves the issue of what constitutes an express and knowing rejection of uninsured/underinsured motorist ("UM/UIM") coverage by a corporation on behalf of related corporations and other insureds.

{¶ 2} On November 13, 1996, G. Michael Linko was killed in a three-fatality automobile accident that occurred in Chautauqua County, New York. The alleged tortfeasor, Shawn LaDue, was insured by Nationwide Insurance, which tendered its policy limit of $100,000 to be divided among the beneficiaries of the three people killed in the accident. Petitioner, Patricia S. Linko, executor of G. Michael Linko's estate, brought the present action seeking a declaration that she is entitled to underinsured motorist ("UIM") coverage under a business automobile policy issued by respondent Indemnity Insurance Company of North America ("Indemnity") that included the decedent as an insured.

{¶ 3} There is no dispute that Linko was driving a company-owned or leased car in the course of his employment with Saint-Gobain Industrial Ceramics, Inc. ("SGIC") at the time of the accident, or that Linko was an insured under the

Indemnity policy. The general liability coverage under that Indemnity policy is subject to limits of $3,000,000 per person/per occurrence. Petitioner seeks to obtain UIM coverage under the Indemnity insurance policy, but Indemnity claims that UIM coverage had been rejected on behalf of SGIC by a related corporate entity.

{¶ 4} SGIC is part of an extended family of related companies. French corporation Compagnie de Saint-Gobain ("CSG") owned a United States holding company, Saint-Gobain Corporation ("SGC"). SGC owned the Norton Company ("Norton"). Norton owned Saint-Gobain Advanced Materials Corporation ("SGAMC"), among others entities, and SGAMC owned the decedent's employer, SGIC.

{¶ 5} The policy at the heart of this case was issued to SGC, Norton, and certain subsidiaries, all of which were named insureds. While all of the named insureds were subsidiaries of SGC, they maintained separate corporate identities and operations. SGIC was not a named insured, but Indemnity has never disputed that SGIC and Linko qualified as additional insureds.

{¶ 6} The policy was amended by "selection forms" used for the rejection of UM/UIM coverage under the laws of particular states. The form used for rejection of UM/UIM coverage under Ohio law lists the named insured simply as "Norton Company." The Norton Company is one of several named insureds listed in the policy, but the Ohio selection form refers to none of the other named insureds. The form was signed by Verne M. Hahn on behalf of the Norton Company. Hahn was an employee of SGC.

{¶ 7} Petitioner filed an action in the Summit County Court of Common Pleas, claiming that the rejection form signed by Hahn did not properly reject UM/UIM coverage for the decedent. The case was removed to the United States District Court for the Northern District of Ohio on the basis of diversity of jurisdiction. Venue was then transferred to the United States District Court for the Western District of New York. On May 18, 1998, petitioner filed a motion for

partial summary judgment in that court; respondent followed with its own motion for summary judgment on July 6, 1998. Petitioner then filed an amended motion to certify questions to this court, which the district court certified on December 21, 1999. This court determined that it would answer questions 1, 2, and 3, which were set forth as follows:

"1. Whether an insured under an automobile liability policy may challenge the authority of a signatory to an uninsured/underinsured motorist coverage rejection form when such signatory's authority is not disputed by the named insureds or insurer.

"2. Whether the language of the uninsured/underinsured motorist coverage rejection forms accompanying the subject automobile liability policy satisf[ies] the offer requirements of R.C. 3837.18 [*sic*, 3937.18].

"3. With regard to the scope and validity of the uninsured/underinsured motorist coverage rejection forms:

"a. Whether each of several separately-incorporated named insureds must be expressly listed in the rejection form in order to satisfy the requirement that the waiver be made knowingly, expressly and in writing by each named insured?

"b. When, on its face, a rejection form was signed by the employee of only one of several separately-incorporated named insureds listed in the policy, whether the four corners of the insurance agreement control in determining whether the waiver was knowingly and expressly made by each of the named insureds, or does the parties' intent, established by extrinsic evidence, control?

"c. If extrinsic evidence of the parties' intent is to be considered in assessing the scope and validity of a rejection form, whether actual authority for rejecting un/underinsured motorist coverage on behalf of a named insured under an automobile liability policy can be established by means other than a signed document granting such authority executed prior to the rejection of such coverage.

"d. Whether a parent corporation has implied authority to waive coverage on behalf of its separately-incorporated subsidiary corporation when the subsidiary corporation did not provide written authorization to waive un/underinsured motor[ist] coverage benefits on its behalf prior to commencement of the policy period?"

———————————

*Becker & Mishkind Co., L.P.A., Michael F. Becker* and *David A. Kulwicki*, for petitioner.

*Elk & Elk Co., L.P.A.*, and *Todd Rosenberg*, in support of petitioner for *amicus curiae*, Ohio Academy of Trial Lawyers.

———————————

**PFEIFER, J.**

{¶ 8} Our responses to the questions of the federal court are as follows: (1) Yes. An insured under an automobile liability policy may challenge the authority of a signatory to a UM/UIM coverage rejection form when such signatory's authority is not disputed by the named insureds or insurer; (2) No. To satisfy the offer requirement of R.C. 3937.18, the insurer must inform the insured of the availability of UM/UIM coverage, set forth the premium for UM/UIM coverage, include a brief description of the coverage, and expressly state the UM/UIM coverage limits in its offer; (3)(a) Yes. Separately incorporated named insureds must each be listed in a rejection form in order to satisfy the offer requirement of R.C. 3937.18; (3)(b) The four corners of the insurance agreement control in determining whether waiver was knowingly and expressly made by each of the named insureds; (3)(c) The question is moot due to our response to (3)(b); and (3)(d) No. Only with a subsidiary's written authorization may a parent corporation reject UM/UIM coverage on the subsidiary's behalf.

{¶ 9} The federal court's questions and this court's complete responses are set forth below.

Question 1

**{¶ 10}** "Whether an insured under an automobile liability policy may challenge the authority of a signatory to an uninsured/underinsured motorist coverage rejection form when such signatory's authority is not disputed by the named insureds or insurer."

**{¶ 11}** Our response is in the affirmative. As was the case with the plaintiff in *Gyori v. Johnston Coca-Cola Bottling Group, Inc.* (1996), 76 Ohio St.3d 565, 669 N.E.2d 824, the plaintiff here was not a named insured but seeks a declaration of whether the employer expressly and knowingly rejected UM/UIM coverage for its employees. The validity of the employer's alleged rejection is at the heart of both cases. The plaintiff in *Gyori* had standing to bring an action to resolve that issue, as does the plaintiff in this case.

Question 2

**{¶ 12}** "Whether the language of the uninsured/underinsured motorist coverage rejection forms accompanying the subject automobile liability policy satisf[ies] the offer requirements of R.C. 3837.18 [*sic*, 3937.18]."

**{¶ 13}** We find that the rejection form in this case fails to satisfy the offer requirements of former R.C. 3937.18(C) as it existed during the policy period. See 145 Ohio Laws, Part I, 211. The pertinent portion of the Indemnity policy reads:

"Ohio Revised Code Section 3937.18 requires us to offer you Uninsured/Underinsured Motorists Insurance coverage in an amount equal to the policy bodily injury liability limit(s) with respect to any motor vehicle registered or principally garaged in the State of Ohio, unless you reject such coverage.

"Unless you have previously rejected this coverage, your policy has been issued to include Uninsured/Underinsured Motorists Insurance coverage at limit(s) equal to the policy bodily injury liability limit(s)."

**{¶ 14}** In *Gyori*, this court held that "[t]here can be no rejection pursuant to R.C. 3937.18(C) absent a written offer of uninsured motorist coverage from the

insurance provider." *Id.*, 76 Ohio St.3d 565, 669 N.E.2d 824, paragraph one of the syllabus. *Gyori* stands for the proposition that we cannot know whether an insured has made an express, knowing rejection of UIM coverage unless there is a written offer and written rejection. It only follows that a valid rejection requires a meaningful offer, *i.e.*, an offer that is an offer in substance and not just in name.

**{¶ 15}** The above paragraph in the Indemnity contract that purports to be an offer states the law, but does not contain the information necessary to make it a meaningful offer. Since *Gyori*, Ohio's appellate courts have developed a useful body of law regarding what constitutes a valid offer of UM/UIM coverage. We agree with the following required elements for written offers imposed by Ohio appellate courts: a brief description of the coverage, the premium for that coverage, and an express statement of the UM/UIM coverage limits. See *Murray v. Woodard* (1997), 120 Ohio App.3d 180, 697 N.E.2d 265 (interpreting the offer requirement of R.C. 3937.181); *Gibson v. Westfield Natl. Ins. Co.* (July 14, 1998), Monroe App. No. 788, unreported, 1998 WL 404201; *Weddle v. Hayes* (Sept. 5, 1997), Belmont App. No. 96-BA-44, unreported, 1997 WL 567964.

**{¶ 16}** Indemnity's alleged offer is complete only in its incompleteness. It does not describe the coverage, does not list the premium costs of UM/UIM coverage, and does not expressly state the coverage limits. We find that an offer must include those three elements. The Indemnity rejection form, lacking in that required information, thus could not be termed a written offer that would allow an insured to make an express, knowing rejection of the coverage.

Question 3(a)

**{¶ 17}** "With regard to the scope and validity of the uninsured/underinsured motorist coverage rejection forms:

"a. Whether each of several separately-incorporated named insureds must be expressly listed in the rejection form in order to satisfy the requirement that the waiver be made knowingly, expressly, and in writing by each named insured."

{¶ 18} According to long-established Ohio law, UM/UIM coverage can be removed from an insurance policy "only by the express rejection of that provision by the insured." *Abate v. Pioneer Mut. Cas. Co.* (1970), 22 Ohio St.2d 161, 51 O.O.2d 229, 258 N.E.2d 429, paragraph one of the syllabus. That fits with the language of R.C. 3937.18(C), which gives the power to the "named insured" to accept or reject UM/UIM coverage. Here, we find by necessary implication that an incorporated entity that is a named insured must be specifically offered the insurance itself before its authorized representative can refuse coverage.

{¶ 19} While a parent corporation may have a close relationship with its subsidiary, the two remain separate and distinct legal entities. *North v. Higbee Co.* (1936), 131 Ohio St. 507, 6 O.O. 166, 3 N.E.2d 391. An offer to the parent does not *per se* constitute an offer to the subsidiary. Without the name of the entity on the selection form, no offer of UM/UIM coverage has been made to that entity.

Question 3(b)

{¶ 20} "When, on its face, a rejection form was signed by the employee of only one of several separately-incorporated named insureds listed in the policy, whether the four corners of the insurance agreement control in determining whether the waiver was knowingly and expressly made by each of the named insureds, or does the parties' intent, established by extrinsic evidence, control?"

{¶ 21} We conclude that the four corners of the insurance agreement control in determining whether the waiver was knowingly and expressly made by each of the named insureds. Again, we cite *Gyori*, which requires a *written* offer and a *written* rejection of UM/UIM coverage. In *Gyori* this court made it clear that the issue of whether coverage was offered and rejected should be apparent from the contract itself. This court stated that the requirement of written offers "will prevent needless litigation about whether the insurance company offered UM coverage." *Id.*, 76 Ohio St.3d at 568, 669 N.E.2d at 827. By requiring an offer and rejection to be in writing, this court impliedly held in *Gyori* that if the rejection is

not within the contract, it is not valid. In doing so, this court greatly simplified the issue of proof in these types of cases—the offer and rejection are either there or they are not. Extrinsic evidence is not admissible to prove that a waiver was knowingly and expressly made by each of the named insureds.

Question 3(c)

{¶ 22} Our response to Question 3(b) makes it unnecessary to answer Question 3(c).

Question 3(d)

{¶ 23} "d. Whether a parent corporation has implied authority to waive coverage on behalf of its separately-incorporated subsidiary corporation when the subsidiary corporation did not provide written authorization to waive un/underinsured motor[ist] coverage benefits on its behalf prior to commencement of the policy?"

{¶ 24} *Gyori* addresses how unwritten representations evade R.C. 3937.18's mandate that rejections of UM/UIM coverage must be express and knowing. Thus, we required in *Gyori* that both offers and rejections of UM/UIM coverage be in writing. *Id.* at paragraphs one and two of the syllabus. We would contradict *Gyori* were we to allow a corporate parent to claim a rejection of UM/UIM coverage by its subsidiary through the subsidiary's implied, unwritten assent thereto. We thus require that a subsidiary's authorization to a parent corporation to waive UM/UIM coverage benefits on its behalf must be in writing and must be incorporated into the contract.

*Judgment accordingly.*

DOUGLAS, RESNICK and F.E. SWEENEY, JJ., concur.

MOYER, C.J., COOK and LUNDBERG STRATTON, JJ., concur in part and dissent in part.

_____

**COOK, J., concurring in part and dissenting in part.**

{¶ 25} I agree with the majority's answer to the first certified question. The parties do not dispute that Linko was an insured under the Indemnity insurance policy. As an insured, Linko has standing to enforce any existing provisions concerning UM/UIM coverage. See *Schumacher v. Kreiner* (2000), 88 Ohio St.3d 358, 363, 725 N.E.2d 1138, 1143 (Lundberg Stratton, J., dissenting). This includes standing to challenge whether there has been a knowing rejection of UM/UIM coverage. See *Travelers Ins. Co. v. Quirk* (Fla.1991), 583 So.2d 1026, 1028; *Atwood v. Internatl. Ins. Co.* (Dec. 10, 1991), Franklin App. No. 91AP-521, unreported, 1991 WL 268346. I respectfully dissent, however, from the majority's answers to the remaining questions because we should decline to answer them.

{¶ 26} The second question asks whether the UM/UIM coverage rejection form that Hahn signed satisfies the written offer requirement crafted in *Gyori v. Johnston Coca-Cola Bottling Group, Inc.* (1996), 76 Ohio St.3d 565, 669 N.E.2d 824. The majority answers this question in the negative by expanding upon *Gyori* and requiring the written offer to contain specific terms. But neither the rule announced in *Gyori* nor the rule announced today has statutory support. See *Gyori*, 76 Ohio St.3d at 569, 669 N.E.2d at 827 (Cook, J., dissenting).

{¶ 27} Under former R.C. 3937.18, UM/UIM coverage exists by operation of law unless the insured has rejected such coverage. We have required that the insured expressly reject UM/UIM coverage in order for the rejection to be effective. See *Abate v. Pioneer Mut. Cas. Co.* (1970), 22 Ohio St.2d 161, 51 O.O.2d 229, 258 N.E.2d 429, paragraph one of the syllabus. We have also allocated to insurance companies the burden of proving that a customer knowingly rejected UM/UIM coverage. *Ady v. W. Am. Ins. Co.* (1982), 69 Ohio St.2d 593, 597, 23 O.O.3d 495, 498, 433 N.E.2d 547, 549. This court "need not judicially impose further extrastatutory requirements upon insurers in order to effectuate the spirit of R.C. 3937.18." *Gyori*, 76 Ohio St.3d at 570, 669 N.E.2d at 828 (Cook, J., dissenting). If the insurance company can demonstrate that its customer had the knowledge

necessary to make an informed rejection of UM/UIM coverage, the "failure to formalize an offer in the face of specifications that plainly decline that coverage should not dictate coverage by default." *Id.*

{¶ 28} Former R.C. 3937.18 does not require a written offer of UM/UIM coverage and certainly does not require a written offer containing the specific terms insisted upon by the majority today. The focus of the trial court's inquiry should be on whether UM/UIM coverage was properly rejected rather than whether Indemnity included specific details in a written offer of coverage. Cf. *Hansberry v. Westfield Ins. Co.* (June 27, 2000), Ross App. Nos. 99CA2504 and 99CA2505, unreported, 2000 WL 897991 (insurer's failure to include certain details about UM/UIM coverage in a written offer "may prevent a finding of a valid rejection [but] will not prevent a court from finding a valid offer in the first instance"). I would therefore decline to answer the second certified question and instead allow the district court to decide whether Hahn knowingly and expressly rejected UM/UIM coverage.

{¶ 29} This court should also decline to answer all of the inquiries included in question three. Each relates to issues concerning "named insureds" on a policy issued to a parent corporation. Though Linko and his employer were insureds under the Indemnity policy, neither is alleged to be a *named* insured. I therefore believe that answering these questions is inappropriate.

MOYER, C.J., and LUNDBERG STRATTON, J., concur in the foregoing opinion.

———————————