DECISION AND JUDGMENT ENTRY
{¶ 1} Plaintiffs-Appellants Brenda and Richard Johnston appeal from the judgment of the Pickaway County Court of Common Pleas which held in favor of Defendant-Appellee Wayne Mutual Insurance Company and found that appellants were not entitled to uninsured- and underinsured-motorist coverage by operation of law.
 {¶ 2} First, appellants argue that the trial court erred in finding that Linko v. Indemn. Ins. Co. of N. Am., 90 Ohio St.3d 445,2000-Ohio-92, 739 N.E.2d 338, did not apply in this case because it construed former R.C. 3937.18. We find that this argument has merit.
 {¶ 3} Second, appellants argue that the trial court erred in finding that appellants' mid-policy rejection of uninsured- and underinsured-motorist coverage became effective when they subsequently renewed the policy. We find this argument to be moot.
 {¶ 4} Accordingly, we reverse the judgment of the trial court.
 I. Proceedings Below {¶ 5} This case concerns the allegation by Plaintiffs-Appellants Brenda and Richard Johnston that their insurance policy with Defendant-Appellee Wayne Mutual Insurance Company (Wayne Mutual) includes, by operation of law, uninsured- and underinsured-motorist coverage (UM/UIM coverage).
 A. Insurance Policies {¶ 6} Since September 20, 1993, Ms. Johnston has had continuous automobile-liability insurance through Wayne Mutual.
 {¶ 7} The original policy contained bodily-injury coverage in the amount of $25,000 per person and $50,000 per accident, as well as UM/UIM coverage in the same amount. The policy stated that it was in effect from September 20, 1993 until March 20, 1994.
 {¶ 8} On August 7, 1996, the Johnstons signed and dated a document entitled "Notice of Option to Reject or Modify Uninsured Motorists Coverage." This document explained that "Ohio law requires us to offer limits of liability for Uninsured Motorists Bodily Injury Coverage * * * equal to your coverage for Bodily Injury * * * Liability." A box was then checked next to a paragraph indicating the following: "I do not wish to purchase [UM/UIM coverage] limits equal to the [bodily-injury coverage] of my policy. I wish to purchase limits of [$25,000] each person, [and $50,000] per accident."
 {¶ 9} On November 4, 1996, Ms. Johnston signed and dated two additional documents. First, was a document identical to the August 7, 1996 document. However, this time the box that was previously checked was left unselected. Instead, two other boxes were checked: one indicating that "I reject uninsured motorists bodily injury coverage"; and the other indicating that "I reject uninsured motorists property damage coverage."
 {¶ 10} Second, Ms. Johnston signed and dated a document entitled "Policy Change Request Memo." This document purported to "remove med pay, uninsured motorists BI and uninsured motorists PD from all three vehicles," and to "remove comp and collision from 1992 Chev."
 B. The Accident {¶ 11} On August 31, 1998, Ms. Johnston was involved in a motor-vehicle accident which was caused by the negligent driving of a third party who was covered by an insurance policy that provided bodily-injury-liability coverage in the amount of $15,000 per person and $30,000 per accident.
 C. Trial Court {¶ 12} The Johnstons filed two complaints with the Pickaway County Court of Common Pleas: (1) on August 30, 2000, the Johnstons filed a complaint against the third party who caused the accident; and (2) on February 1, 2001, the Johnstons filed a complaint against Wayne Mutual. The trial court consolidated these cases.
 {¶ 13} Subsequently, the Johnstons settled the matter against the third party and dismissed those claims. Thus, the only remaining claims were those concerning Wayne Mutual. Accordingly, the case proceeded on the grounds of whether the Johnstons properly rejected UM/UIM coverage with Wayne Mutual, and, consequently, whether they were entitled to UM/UIM coverage by operation of law.
 {¶ 14} The parties agreed to factual stipulations and requested the trial court to "rule on the insurance coverage issues presented * * * without the need for testimony."
 {¶ 15} Shortly thereafter, the trial court issued its judgment entry and found in favor of Wayne Mutual. In so doing, it couched its reasoning in response to three arguments set forth by the Johnstons in their complaint. These three arguments, and the trial court's response to each, are as follows.
 {¶ 16} First, the Johnstons argued that, because only Ms. Johnston signed the November 4, 1996 rejection, it was unenforceable. The trial court disagreed and found that the insurance policies designated Ms. Johnston as the "named insured," and Mr. Johnston as the "insured." Thus, the trial court held it was only necessary for Ms. Johnston to have signed the documents.
 {¶ 17} Second, the Johnstons argued that, because the rejection of UM/UIM coverage was not received prior to the commencement of the policy term, it was ineffective pursuant to Gyori v. Johnston Coca-Cola BottlingGroup, Inc., 76 Ohio St.3d 565, 1996-Ohio-358, 669 N.E.2d 824. The trial court again disagreed, finding that, "even if this [c]ourt were to determine that the rejection was not effective during the policy period in which it was executed, this [c]ourt finds that the rejection certainly would have been effective when the policy was renewed * * *."
 {¶ 18} Third, the Johnstons argued that the rejection form did not comply with the mandate of Linko v. Indemn. Ins. Co. of N. Am.,90 Ohio St.3d 445, 2000-Ohio-92, 739 N.E.2d 338. Again, the trial court disagreed. The lower court found that, "since [the Johnstons'] accident took place on August 31, 1998, it is covered by the policy period * * * * which * * * is governed by the version of [R.C. 3937.18(C)] in effect as of that date." The trial court went on to explain that the accident occurred after the effective date of the amended version of R.C.3937.18(C). Accordingly, the trial court found that Linko was inapplicable because it applied former R.C. 3937.18(C).
 II. The Appeal {¶ 19} Subsequently, the Johnstons timely filed an appeal with this Court. In their brief, they do not challenge the trial court's judgment as it pertained to Mr. Johnston. Rather, their assignments of error concern only whether Ms. Johnston's rejection of UM/UIM coverage was effective and, consequently, which version of R.C. 3937.18 applies in this matter.
 {¶ 20} First Assignment of Error: "The trial court erred in applying amended R.C. 3937.18(C) to the facts of the case and holding that a rejection of UM/UIM coverage in the middle of the policy period became effective when the policy renewed much later based upon the amended statute's wording that rejection `shall be effective on the date signed.'"
 {¶ 21} Second Assignment of Error: "The trial court erred in holding that [Linko v. Indemn. Ins. Co. of N. Am., 90 Ohio St.3d 445, 2000-Ohio-92, 739 N.E.2d 338,] did not apply to the facts of the case and that amended R.C. 3937.18(C) was controlling based upon the court's errant thought that the date of the accident determined whether Linko or the amended statute was dispositive."
 {¶ 22} We will address the arguments set forth in the Johnstons' assignments of error in an order most conducive to our analysis.
 {¶ 23} The interpretation of the insurance-contract issues in this case involves solely questions of law. See Leber v. Smith,70 Ohio St.3d 548, 1994-Ohio-361, 639 N.E.2d 1159; Erie Ins. Group v.Fisher (1984), 15 Ohio St.3d 380, 474 N.E.2d 320. Accordingly, our standard of review is de novo and we will address the Johnstons' arguments independently of the trial court's decision. See, e.g.,Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm, 73 Ohio St.3d 107,1995-Ohio-214, 652 N.E.2d 684; Ohio Bell Tel. Co. v. Pub. Util. Comm.
(1992), 64 Ohio St.3d 145, 147, 593 N.E.2d 286; Giel v. Am. Nat'l Prop. Cas. Ins. Co. (Oct. 12, 2001), Geauga App. No. 2000-G-2314, 2001-Ohio-4309.
 A. The Applicable Version of R.C. 3937.18 {¶ 24} The threshold issue in this matter is which version of R.C. 3937.18 applies in this case: the former version, or the version amended by Am.Sub.H.B. No. 261.[1] The Johnstons contend it is the former version, while Wayne Mutual contends — and the trial court agreed — that it is the amended version. We find that Wayne Mutual and the trial court were correct.
 1. Am.Sub.H.B. No. 261 {¶ 25} R.C. 3937.18 governs UM/UIM coverage. The Ohio General Assembly amended this statute by way of Am.Sub.H.B. No. 261, which went into effect on September 3, 1997.
 {¶ 26} It is important to determine which statute applies in this case for two seemingly obvious reasons. First, there are additional provisions in the amended statute that were not present in the former version. And, second, certain case law may not apply because it construed the former statute instead of the amended version.
 {¶ 27} Thus, it is imperative to determine which version is applicable in this case. The Supreme Court of Ohio, in Wolfe v. Wolfe,88 Ohio St.3d 246, 2000-Ohio-322, 725 N.E.2d 261, provided much guidance in this regard.
 2. Wolfe v. Wolfe {¶ 28} The Wolfe Court began by finding that R.C. 3937.31 requires every automobile-liability insurance policy to be issued with a guaranteed two-year policy period. See id. The court went on to explain that, during this period, "the policy cannot be altered except by agreement of the parties and in accordance with R.C. 3937.30 to 3937.39." Id. at 254, 2000-Ohio-322, N.E.2d at 265.
 {¶ 29} Next, the Wolfe Court found that "the commencement of each policy period mandated by R.C. 3937.31(A) brings into existence a new contract of automobile insurance, whether the policy is categorized as a new policy of insurance or a renewal of an existing policy." Wolfe v.Wolfe, 88 Ohio St.3d at 265, 2000-Ohio-322, 725 N.E.2d at 266. The court went on to explain that, "[p]ursuant to our decision in [Ross v. FarmersIns. Group of Cos., 82 Ohio St.3d 281, 1998-Ohio-381, 695 N.E.2d 732], the statutory law in effect on the date of issue of each new policy is the law to be applied." Wolfe v. Wolfe, 88 Ohio St.3d at 254,2000-Ohio-322, 725 N.E.2d at 265.
 {¶ 30} Finally, the Wolfe Court found that, "the guarantee period mandated by R.C. 3937.31(A) is not limited solely to the first two years following the initial institution of coverage. Rather, the statute applies to every new automobile insurance policy issued, regardless of the number of times the parties previously have contracted for motor vehicle insurance coverage." Wolfe v. Wolfe, 88 Ohio St.3d at 254,2000-Ohio-322, 725 N.E.2d at 265.
 {¶ 31} In applying these principles to the present case, theWolfe Court began with the "original issuance date of [the] appellant's automobile liability insurance policy," and counted "successive two-year policy periods from that date." Id. at 254, 2000-Ohio-322,25 N.E.2d at 265. From this formula, the court determined what law was applicable at the time of the accident.
 {¶ 32} With the foregoing principles and formula in mind, we turn to the case sub judice.
 {¶ 33} Here, the original policy was issued on September 20, 1993. The policy itself states that the term expires on March 20, 1994. However, this term is less than the two-year period mandated by Wolfe.
 {¶ 34} Accordingly, to determine the law that was in effect at the time of the accident, we do not count successive terms from the stated expiration according to the erroneous policy — which is what the Johnstons have requested this Court to do. Rather, we must apply Wolfe
and count successive two-year policy periods from the "original issuance date of [the] appellant's automobile liability insurance policy." Id. at 254, 2000-Ohio-322, 25 N.E.2d at 265.
 {¶ 35} Therefore, the first two-year term was from September 20, 1993 to September 20, 1995; the second term was from September 20, 1995 to September 20, 1997; and the third term — the term in effect at the time of the accident — was from September 20, 1997 to September 20, 1999.
 {¶ 36} Accordingly, the amended version of R.C. 3937.18 is the applicable version in this case because Am.Sub.H.B. No. 261 went into effect on September 3, 1997, which makes it "the statutory law in effect on the date of issue of [the] new policy * * *." Wolfe v. Wolfe,88 Ohio St.3d at 250, 2000-Ohio-322, 725 N.E.2d at 265.
 B. Validity of the Rejection {¶ 37} The Johnstons argue in their Second Assignment of Error that the trial court erred in finding that Linko did not apply in this case because it construed former R.C. 3937.18. We agree.
 1. Rejection-Form Requirements; Gyori and Linko {¶ 38} The Supreme Court of Ohio, in two principal cases, provided guidance as to what constitutes a valid offer and, concomitantly, what constitutes a valid rejection of UM/UIM coverage.
 {¶ 39} First, in Gyori v. Johnston Coca-Cola Bottling Group,Inc., 76 Ohio St.3d at 565, 1996-Ohio-358, 669 N.E.2d at 824, the Supreme Court of Ohio held that an insured's rejection of UM/UIM coverage must be in writing and received by the insurer prior to commencement of the policy year. The court's basis for this holding was that one cannot know whether an insured has made an express, knowing rejection of UIM coverage unless there is a written offer and written rejection.
 {¶ 40} Second, in Linko v. Indemn. Ins. Co. of N. Am.,90 Ohio St.3d at 445, 2000-Ohio-92, 739 N.E.2d at 338, the Supreme Court of Ohio attempted to provide additional guidance by setting forth precisely what language needed to be included in a UM/UIM-coverage rejection form. TheLinko Court held that, in order to satisfy the offer requirement of R.C.3937.18(C), the insurer must satisfy the following four requirements: (1) inform the insured of the availability of UM/UIM coverage; (2) set forth the premium for such coverage; (3) include a brief description of the coverage; and (4) expressly state the UM/UIM coverage limits in its offer. See id.
 2. The Effect of Am.Sub.H.B. No. 261 on Gyori and Linko {¶ 41} The relevant provision in this case is R.C. 3937.18(C). As it was amended by Am.Sub.H.B. No. 261, it provides the following:
 {¶ 42} "A named insured or applicant may reject or accept [UM/UIM coverage] as offered under division (A) of this section * * *. A named insured's * * * rejection of [UM/UIM coverage] * * * shall be in writingand shall be signed by the named insured * * *. A named insured's * * * written, signed rejection of [UM/UIM coverage] as offered under division (A) of this section * * * shall be effective on the day signed, shallcreate a presumption of an offer of coverages consistent with division(A) of this section, and shall be binding on all other named insureds * * *." (Emphasis added.) R.C. 3937.18(C), as amended by Am.Sub.H.B. No. 261.
 {¶ 43} While we find that this amendment substantially affects the holding set forth in Gyori, we find that it does not affect the holding set forth in Linko.
 {¶ 44} Clearly, the amendment has codified Gyori's requirement that the insured's rejection of coverage must be in writing, while, on the other hand, it has invalidated Gyori's requirement that the rejection must be received prior to the commencement of the policy year, and allows an insured to reject the coverage going forward — after the policy term had commenced. See Purvis v. Cincinnati Ins. Co., Greene App. No. 2001-CA104, 2002-Ohio-1803; Comella v. St. Paul Mercury Ins. Co. (N.D.Ohio. 2001), 177 F. Supp.2d 690, 700.
 {¶ 45} However, the amendment does not address the substance of the rejection form; we find no provisions in Am.Sub.H.B. No. 261 which clarified or modified what the contents of a written offer must be. See, e.g., Pillo v. Stricklin, Stark App. No. 2001CA00204, 2001-Ohio-7049 (finding that Am.Sub.H.B. No. 261 did not eliminate the Linko
requirements because the amendments did not address the requirements for the contents of a written offer).
 {¶ 46} We note that there is a split of authority in Ohio as to whether Linko applies to R.C. 3937.18(C), as amended by Am.Sub.H.B. No. 261. Compare Purvis v. Cincinnati Ins. Co., Greene App. No. 2001-CA-104, 2002-Ohio-1803 (finding that Linko does not apply); and Still v. IndianaIns. Co., Stark App. No. 2001CA00300, 2002-Ohio-1004 (finding that Linko
does apply).
 {¶ 47} In fact, this conflict has recently been certified to the Supreme Court of Ohio. See Kemper v. Michigan Millers Mut. Ins. Co. (2002), 94 Ohio St.3d 1435, 761 N.E.2d 49 (granting the motion for consideration to answer the certified questions found at93 Ohio St.3d 1483, 758 N.E.2d 184). However, as of the writing of this opinion, the Supreme Court of Ohio has not resolved this conflict. Accordingly, we are left to resolve this issue ourselves, and we do so by finding that a rejection form made under R.C. 3937.18(C), as amended by Am.Sub.H.B. No. 261, must conform to the requirements set forth inLinko.
 3. Compliance with Linko {¶ 48} In the instant case, the trial court held that Linko does not apply in this case. As we have explained, we disagree with this finding. Accordingly, we will review the rejection form and determine whether it complied with the requirements of Linko.
 {¶ 49} As we explained above, Linko requires the insurer to satisfy the following four requirements: (1) inform the insured of the availability of UM/UIM coverage; (2) set forth the premium for such coverage; (3) include a brief description of the coverage; and (4) expressly state the UM/UIM coverage limits in its offer. See id.
 {¶ 50} A review of the rejection form reveals that it does not comply with the Linko requirements; specifically, the form does not set forth the premium for UM/UIM coverage, the precise amount of UM/UIM coverage, nor does it describe such coverage.
 {¶ 51} Wayne Mutual does not contest that the form is deficient. However, it argues that, "at the time [Ms. Johnston] signed the rejection form, she had been provided all the necessary information as required by the Linko case * * *." Thus, Wayne Mutual looks to evidence outside of the rejection form — specifically, deposition testimony and the declaration pages of the original policy — to support its argument that Ms. Johnston's rejection of UM/UIM coverage was in compliance withLinko.
 {¶ 52} In Layne v. Westfield Ins. Co., Ross App. Nos. 01CA2596 and 01CA2598, 2002-Ohio-802, we squarely addressed this argument. There, we quoted from Linko itself, in which the Supreme Court of Ohio stated the following on the issue of extrinsic evidence:
 {¶ 53} "By requiring an offer and rejection to be in writing, this court impliedly held in Gyori that if the rejection is not within the contract, it is not valid. In doing so, this court greatly simplified the issue of proof in these types of cases — the offer and rejectionare either there or they are not. Extrinsic evidence is not admissible toprove that a waiver was knowingly and expressly made * * *." (Emphasis added.) Layne, supra, quoting Linko v. Indemn. Ins. Co. of N. Am.,90 Ohio St.3d at 450, 2000-Ohio-92, 739 N.E.2d at 343.
 {¶ 54} Therefore, we find that the Johnstons' rejection of UM/UIM coverage was invalid, and, consequently, we sustain their Second Assignment of Error.
 C. Timing of Rejection {¶ 55} The Johnstons' argue in their First Assignment of Error that the trial court erred in finding that the Johnstons' rejection of UM/UIM coverage during the second policy term became effective when they subsequently renewed the policy.
 {¶ 56} Although we have noted that the portion of Gyori which addressed this issue was invalidated by Am.Sub.H.B. No. 261, this assignment of error has been rendered moot because we have found the Johnstons' rejection to be invalid. See James A. Keller, Inc. v.Flaherty (1991), 74 Ohio App.3d 788, 791, 600 N.E.2d 736 (holding that, "[i]t is not the duty of a court to decide purely academic or abstract questions * * *").
 III. The Conclusion {¶ 57} For the foregoing reasons, we sustain the Johnstons' Second Assignment of Error, find the First Assignment of Error to be moot, and reverse the judgment of the Pickaway County Court of Common Pleas. This cause is remanded for further proceedings consistent with this opinion. On remand, the trial court must determine the proper amount of damages due to the Johnstons and consider whether Wayne Mutual is entitled to any offset.
Reversed and Remanded.
Abele, P.J., and Kline, J.: Concur in Judgment Only.
[1] We note that, at the time of this appeal, R.C. 3937.18 has been amended three times subsequent to Am.Sub.H.B. No. 261: by Am.Sub.S.B. No. 57, which went into effect on November 2, 1999; by Am.Sub.S.B. No. 267, which went into effect on September 21, 2000; and, most recently, by Am.Sub.S.B. No. 97, which went into effect on October 31, 2001. We also note that the current version of R.C. 3937.18 retains none of the language at issue in this case.