OPINION
{¶ 1} Appellant Karen Fish, et al., as the Administrator of the Estate of Kenneth Fish, appeals the decision of the Stark County Court of Common Pleas that determined no coverage existed under an automobile liability policy issued by Appellee Ohio Casualty Insurance Company ("Ohio Casualty") and a commercial general liability ("CGL") policy issued by West American Insurance Company ("West American"). The following facts give rise to this appeal.
 {¶ 2} This lawsuit is the result of an accident that occurred on April 19, 1996, when an automobile driven by Richard Williams struck Kenneth Fish's motorcycle. Kenneth Fish died as a result of the injuries he sustained in the accident. At the time of his death, Kenneth Fish was survived by two minor children; his mother, Karen Fish; his father, Cecil Fish, Jr.; his sister, Lori Michalec; and two brothers, Jason Fish and James Fish.
 {¶ 3} On October 30, 1996, Karen Fish, as the Administrator of Kenneth Fish's Estate, settled with the tortfeasor, for the policy limits of $12,500 and released his automobile liability insurance carrier, Colonial Insurance Company of California. Prior to settling with the tortfeasor, the Estate of Kenneth Fish notified Ohio Casualty and West American of its intent to pursue UIM coverage under their respective policies. Appellees denied UIM coverage existed under either policy.[1]
 {¶ 4} The Estate of Kenneth Fish also received UIM benefits from Allstate Insurance Company ("Allstate"), the personal UM/UIM carrier of Karen and Cecil Fish. Allstate paid its UIM coverage limit of $50,000, less a setoff for the $12,500 received from the tortfeasor. Thereafter, on June 22, 2001, appellants filed a declaratory judgment action seeking UIM coverage under various policies. For purposes of this appeal, the policies at issue are an automobile liability policy issued by Ohio Casualty, to the decedent's employer, Coast to Coast Machine, Inc. ("Coast to Coast"), which provides auto liability coverage in the amount of $500,000. The second policy at issue is a CGL policy issued by West American, to Coast to Coast, which provides liability coverage in the amount of $1 million dollars.
 {¶ 5} In their declaratory judgment action, Kenneth Fish, Karen Fish, Cecil Fish, Jr., James Fish and Lori Michalec seek UIM coverage under both the automobile liability policy and the CGL policy. Appellants, Ohio Casualty and Western American filed motions for summary judgment. On December 17, 2002 and in a nunc pro tunc judgment entry filed on December 19, 2002, the trial court granted Ohio Casualty's and Western American's motion for summary judgment and denied appellants' motion for summary judgment. The trial court concluded neither policy extended UIM coverage to appellants.
 {¶ 6} Appellants timely filed a notice of appeal and set forth the following assignments of error for our consideration:
 {¶ 7} "I. THE TRIAL COURT ERRED IN GRANTING DEFENDANT-APPELLEE OHIO CASUALTY INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT AND IN DENYING PLAINTIFF-APPELLANT'S (SIC) MOTION FOR SUMMARY JUDGMENT ON THE ISSUE OF UNDERINSURED MOTORIST COVERAGE WITH RESPECT TO THE AUTO POLICY ISSUED BY OHIO CASUALTY INSURANCE COMPANY.
 {¶ 8} "II. THE TRIAL COURT ERRED IN GRANTING DEFENDANT-APPELLEE WEST AMERICAN INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT AND IN DENYING PLAINTIFF-APPELLANT'S (SIC) MOTION FOR SUMMARY JUDGMENT ON THE ISSUE OF UNDERINSURED MOTORIST COVERAGE WITH RESPECT TO THE GENERAL LIABILITY POLICY ISSUED BY WEST AMERICAN INSURANCE COMPANY."
 "Summary Judgment Standard" {¶ 9} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party, Inc. (1987),30 Ohio St.3d 35, 36. As such, we must refer to Civ.R. 56 which provides, in pertinent part:
 {¶ 10} "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor."
 {¶ 11} Pursuant to the above rule, a trial court may not enter summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the non-moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. Vahila v. Hall, 77 Ohio St.3d 421, 429, 1997-Ohio-259, citing Dresher v. Burt, 75 Ohio St.3d 280, 1996-Ohio-107.
 {¶ 12} It is based upon this standard that we review appellants' assignments of error.
 I {¶ 13} Appellants maintain, in their First Assignment of Error, the trial court erred when it determined they were not entitled to UIM benefits under the automobile liability policy Ohio Casualty issued to the decedent's employer. We agree.
 {¶ 14} Appellants make several arguments in support of this assignment of error. First, appellants contend UIM coverage arises by operation of law, under Ohio Casualty's automobile liability policy, because Ohio Casualty does not have a valid and enforceable written offer and rejection of UM/UIM coverage pursuant to the Ohio Supreme Court's decision in Linko v. Indemn. Ins. Co. of N. Am., 90 Ohio St.3d 445,2000-Ohio-92. The Linko case requires that in making a written offer, the insurer must inform the insured of the availability of UM/UIM coverage, set forth the premium, describe the coverage and state the coverage limits. Id. at 449. Failure to do so results in UM/UIM coverage arising by operation of law.
 {¶ 15} Pursuant to Linko, we agree with appellants' argument that because Ohio Casualty does not have a valid written offer and rejection, UM/UIM coverage arises, by operation of law, under said policy in the amount of $500,000.
 {¶ 16} Appellants next maintain that since the decedent's employer, Coast to Coast, is entitled to UIM coverage by operation of law, the decision of Scott-Pontzer v. Liberty Mut. Fire Ins. Co.,85 Ohio St.3d 660, 1999-Ohio-292, requires that the employees of Coast to Coast, including the decedent, receive the UIM coverage afforded under the automobile liability policy. Appellants further maintain that since the decedent qualifies as an insured under Ohio Casualty's automobile liability policy, they are entitled to receive his UIM benefits from Ohio Casualty pursuant to the Ohio Supreme Court's decision in Holt v. GrangeMut. Cas. Co., 79 Ohio St.3d 401, 1997-Ohio-375. In Holt, the Court held, in pertinent part, that:
 {¶ 17} "2. When an uninsurance/underinsurance provider pays proceeds for the wrongful death of a policyholder, those proceeds are characterized as `damages' recovered by a personal representative under R.C. Chapter 2125, regardless of how or why they are paid. Even though the damages ultimately go to the beneficiaries, the proceeds are payable due to the fact that an `insured' party — the decedent — suffered a wrongful death. (In re Estate of Reeck [1986],21 Ohio St.3d 126, 21 OBR 429, 488 N.E.2d 195, syllabus, applied and followed.)
 {¶ 18} "3. An uninsured/underinsured motorist coverage provider's use of restrictive policy language defining an `insured' is ineffectual to exclude from coverage the claim of an uncompensated wrongful death statutory beneficiary seeking to recover under the uninsurance/underinsurance provision of the decedent's policy, since the correct focus for wrongful death recovery under a decedent's policy of uninsured/underinsured coverage is whether the decedent was an `insured.' "
 {¶ 19} Appellants also rely upon this court's decision in Waltonv. Continental Cas. Co., Holmes App. No. 02CA002, 2002-Ohio-3831. In Walton, plaintiff sought UIM benefits, under a business auto policy, issued to plaintiff's mother's employer. Id. at ¶ 3. In concluding that plaintiff was not entitled to UIM coverage under her mother's employer's business auto policy, we first reviewed the language of the policy defining "Who is an Insured." The language reviewed, in Walton, is identical to the language defining "Who is an Insured" in the case sub judice. This language provides as follows:
 {¶ 20} "1. WHO IS AN INSURED
 {¶ 21} "The following are `insureds':
 {¶ 22} "a. You for any covered `auto.'
 {¶ 23} "b. Anyone else while using with your permission a covered `auto' you own, hire or borrow except
 {¶ 24} "(1) The owner or anyone else from whom you hire or borrow a covered `auto'. This exception does not apply if the covered `auto' is a `trailer' connected to a covered `auto' you own.
 {¶ 25} "(2) Your employee if the covered `auto' is owned by that employee or a member of his or her household.
 {¶ 26} "(3) Someone using a covered `auto' while he or she is working in a business of selling, servicing, repairing, parking or storing `autos' unless that business is yours.
 {¶ 27} "(4) Anyone other than your employees, partners, a lessee or borrower or any of their employees, while moving property to or from a covered `auto'."
 {¶ 28} Ohio Casualty's automobile liability policy also contains the following language, in the section defining "Who is an Insured". This language provides as follows:
 {¶ 29} "(5) A partner of yours for a covered `auto' owned by him or her or a member of his or her household.
 {¶ 30} "c. Anyone liable for the conduct of an `insured' described above but only to the extent of that liability."
 {¶ 31} Based upon almost identical language, we concluded, in Walton, that plaintiff was not entitled to UIM benefits under her mother's employer's business auto policy. In reaching this conclusion, we stated:
 {¶ 32} "Pursuant to Scott-Pontzer and its progeny, we find the `you' portion of the definition of an `insured' includes employees of Worthington Industries * * *. Therefore, an employee, such as appellant's [plaintiff's] mother, would be entitled to UIM benefits under the Continental policy. However, the definition of `insured' in the Continental policy does not contain the `if you are an individual, any family member language found in the Pontzer policy. We find the absence of this language precludes a finding appellant was an `insured' under the Continental policy." Id. at ¶ 26.
 {¶ 33} In applying the Walton decision to the case sub judice, we conclude the decedent is an insured entitled to UM/UIM coverage that arises by operation of law under Ohio Casualty's automobile liability policy. Therefore, according to Holt, the personal representative of the decedent's estate, Karen Fish, is entitled to recover UIM proceeds, on behalf of the decedent's estate, under Ohio Casualty's automobile liability policy, as a result of the decedent's wrongful death since the decedent qualifies as an insured under Ohio Casualty's automobile liability policy.
 {¶ 34} Appellants' First Assignment of Error is sustained.
 II {¶ 35} In their Second Assignment of Error, appellants contend the trial court erred when it determined they were not entitled to UIM benefits under a CGL policy issued by Western American to the decedent's employer. We disagree.
 {¶ 36} Appellants maintain the CGL policy is a motor vehicle liability policy subject to the mandatory offering of UM/UIM coverage required by R.C. 3937.18. Since Western American did not offer such coverage appellants contend said coverage arises by operation of law and therefore, they are entitled to UIM coverage in the amount of $1 million. Appellants refer to the "valet parking" and "mobile equipment" provisions of Western American's CGL policy to support their argument that the policy is a motor vehicle liability policy.
 {¶ 37} We have previously concluded, in Heidt v. Federal Ins.Co., Stark App. No. 2002CA00314, 2003-Ohio-1785, that the inclusion of these provisions, in a CGL policy, do not transform the policy into a motor vehicle liability policy thereby requiring the mandatory offering of UM/UIM coverage. Id. at ¶ 29.
 {¶ 38} As in the case sub judice, the Heidt case involved a pre-H.B. 261 CGL policy. Heidt addressed both the "valet parking" and "mobile equipment" provisions. As to the "valet parking" provision, we stated as follows:
 {¶ 39} "* * * In Szekeres [v. State Farm and Cas. Co., Licking App. No. 02CA00004, 2002-Ohio-5989], this court explained that it was overruling its previous decision in Cox v. State Farm Fire and Cas. Co., Licking App. No. 2001CA00117, 2002-Ohio-3076, a pre-H.B. 261 case that held a CGL policy containing a `valet parking' provision was a motor vehicle liability policy thereby requiring the mandatory offering of UM/UIM coverage under R.C. 3937.18.
 {¶ 40} "The Cox case relied upon this court's decision in Burkhartv. CNA Ins. Co., Stark App. No. 2001CA00265, 2002-Ohio-903. In Burkhart, a pre-H.B. 261 case, we found that `valet parking' and `mobile equipment' provisions transformed a CGL policy into a motor vehicle policy which required the mandatory offering of UM/UIM coverage.
 {¶ 41} "In overruling Cox, we explained in Szekeres, that a `valet parking' provision is not a motor vehicle provision but a property damage provision. Id. at 4. Thus, Szekeres, a pre-H.B. 261 case, concluded the CGL policy was not a motor vehicle liability policy even though it contained a `valet parking' provision. Therefore, a `valet parking' provision does not transform a CGL policy into a motor vehicle liability policy under either the pre-H.B. 261 version of R.C. 3937.18 or the post-H.B. 261 version of R.C. 3937.18." Id. at ¶ 29-¶ 31.
 {¶ 42} In addressing the "mobile equipment" provision, in Heidt, we concluded as follows:
 {¶ 43} "* * * [T]he type of coverage provided is for bodily injury or property damage as a result of the use of `mobile equipment.' As in Hillyer [v. State Farm Fire and Cas. Co., 97 Ohio St.3d 411,2002-Ohio-6662], the fact that an automobile may be involved because a cherry picker is mounted to it is incidental to coverage. An insured is entitled to recover, not because an automobile or truck is involved, but because of the type of equipment attached to the automobile or truck. Further, the other `mobile equipment' defined in the policy clearly refers to a limited class of equipment not primarily designed to transport people on public roads.
 {¶ 44} "Finally, the policy clearly provides, in Section F of the definition of `mobile equipment,' that the equipment referred to in paragraphs F.2. and F.3. are not `mobile equipment' but are to be considered `autos.' `Autos' are specifically excluded from coverage according to the bodily injury/property damage exclusions contained in the policy. Therefore, the `mobile equipment' provision does not convert the CGL policy into a motor vehicle liability policy requiring UM/UIM coverage to be offered." Id. at ¶ 34-¶ 35.
 {¶ 45} Western American's provisions concerning "valet parking" and "mobile equipment" are almost identical to the provisions reviewed in Heidt. Accordingly, for the reasons set forth in Heidt, we conclude these provisions contained in Western American's CGL policy do not transform the policy into a motor vehicle liability policy thereby requiring the mandatory offering of UM/UIM coverage even though the policy pre-dates the H.B. 21 version of R.C. 3937.18.
 {¶ 46} Appellants' Second Assignment of Error is overruled.
 {¶ 47} For the foregoing reasons, the judgment of the Court of Common Pleas, Stark County, Ohio, is hereby affirmed in part, reversed in part and remanded for further proceedings consistent with this opinion.
By: Wise, J. Farmer, J., concurs.
[1] Appellees stipulated, in the trial court, that they have not been prejudiced by late notice or destruction of subrogation rights. See Revised Stipulations of Defendants Ohio Casualty Ins. Co. and West American Ins. Co. filed June 21, 2002.