{¶ 128} I respectfully dissent from the majority's analysis and disposition of Travelers Indemnity Company's third assignment of error, Grange Mutual Casualty Company's fifth assignment of error and St. Paul Fire and Marine Insurance Company's first assignment of error. I concur with the majority's disposition of Travelers' second assignment of error, but would apply a slightly different analysis.
{¶ 129} With respect to Travelers' second assignment of error, the majority, in its decision, after finding that Jerrold Dalton was not an insured under the general liability policy, further found that such policy was not an automobile policy subject to R.C. 3937.18.
{¶ 130} While I concur with the majority's resolution of such assignment, I believe that the determinative issue is whether the subject policy is an automobile policy. If the general liability policy is an automobile policy, then Travelers would have been required to offer UM/UIM coverage to the insureds under the same. However, since the subject policy was not an automobile policy, the issue of who was insured for purposes of UM/UIM coverage under the same need not be addressed.
{¶ 131} With respect to Traveler's third assignment of error, I respectfully dissent as to the analysis and disposition of the majority which finds that there is no coverage for the estate of Jerrold Dalton under the umbrella policy. The trial court had found that the estate was covered. I would find that the estate is covered but only as to amounts over the One Million Dollar ($1,000,000) limits in the underlying commercial auto policy.
The Travelers' umbrella policy contains an endorsement modifying coverage, and this endorsement indicates that the umbrella insurance does not apply to any liability imposed on the insured, or the insured's insurer, under any of the following laws: (1) Uninsured Motorists; (2) Underinsured Motorists; or (3) "Auto" No-Fault Law. I do not find that this endorsement is sufficient to reject UM/UIM coverage if the umbrella policy is an auto policy, and I would find that it is an auto policy based on the "Who Is An Insured" language cited by the majority.
{¶ 132} The dates of this policy are July 1, 1997, to July 1, 1998, which makes it a pre-H.B. 261 case. The Ohio Supreme Court has stated that a valid rejection can only exist if the rejection is in writing and there was a valid offer, and a valid offer must be in writing and the insurer must (1) inform the insured of the availability of UM/UIM coverage, (2) set forth the premium for the coverage, (3) include a brief description of the coverage, and (4) expressly state the UM/UIM coverage limits in its offer. See Gyori v. Johnston Coca Cola Bottling Group,76 Ohio St.3d 565, 1996-Ohio-358, 669 N.E.2d 824 and Linko v. Indemn. Ins. Co. of N. Am., 90 Ohio St.3d 445, 2000-Ohio-92, 739 N.E.2d 338. The endorsement excluding UM/UIM coverage does not contain these requirements. Based on this analysis, I would find that there was no rejection of UM/UIM coverage, and that the UM/UIM coverage arises by operation of law.
I would also find that employees are insureds under the UM/UIM coverage which arises by operation of law. Under the liability portion of the umbrella policy, employees are included as insureds if operating an auto not owned by the named insured, but only while that auto is being used in the named insured's business. However, similar limiting language was present in the umbrella policy in Scott-Pontzer, but the Ohio Supreme Court found that "any language in the Liberty Mutual umbrella policy restricting insurance coverage was intended to apply solely to excess liability coverage and not for purposes of underinsured motorist coverage." See Scott-Pontzer v. Liberty Mutual Fire Insurance Co.,85 Ohio St.3d 660, 666, 1999-Ohio-292. Therefore, I would find that Jerrold Dalton, as an employee of the named insured, was covered under the operation of law UM/UIM coverage.
{¶ 133} I would find that the amount of that coverage is limited to amounts over the $1,000,000 limits in the underlying commercial auto policy. Section I — Coverages, of the umbrella policy, sets forth the insuring agreement. In part it states: "We will pay on behalf of the insured the `ultimate net loss' in excess of the `applicable underlying limit' which the insured becomes legally obligated to pay as damages because of `bodily injury', `property damage,' `personal injury,' or `advertising injury' to which this insurance applies. . . ." Section V — Definitions sets forth the meaning of "applicable underlying limits." "Applicable underlying limit" means:
{¶ 134} "a. If the policies of `underlying insurance' apply to the `occurrence' or `offense,' the greater of:
{¶ 135} "(1) The amount of insurance stated in the policies of `underlying insurance' in the Declarations or any other available insurance less the amount by which any aggregate limit so stated has been reduced solely due to payment of claims; or
{¶ 136} "(2) The `retained limit' shown in the Declarations; or
{¶ 137} "b. If the policies of `underlying insurance' do not apply to the `occurrence' or `offense', the amount stated in the Declarations as the `retained limit.'
{¶ 138} "The limits of insurance in any policy of `underlying insurance' will apply even if:
{¶ 139} "a. The `underlying insurer' claims the insured failed to comply with any condition of the policy; or"b. The `underlying insurer' becomes bankrupt or insolvent."
{¶ 140} I would find that the underlying commercial auto policy applied to the occurrence in the case sub judice, and the amount of insurance in the declarations for that policy was $1,000,000. See umbrella policy, endorsement CG DO 23 04 96. The limits of this underlying insurance apply even if the insured failed to comply with any condition of that policy, including notice. R.C. 3937.18 requires only that UM/UIM coverage is offered in the same amount as the liability coverage.
{¶ 141} Therefore, I would sustain Travelers' third assignment of error in part and would find the estate is covered under the umbrella policy for amounts exceeding $1,000.000.
{¶ 142} I will discuss my dissent to Grange's fifth assignment of error after I discuss my dissent to St. Paul's first assignment of error.
{¶ 143} I respectfully dissent from the majority's analysis and disposition of St. Paul's first assignment of error.
With respect to St. Paul's first assignment of error, the trial court found, and the majority agrees, that the estate, Mrs. Dalton, and Nikole Dalton, Miranda Dalton, and Brian Dalton, the three resident children, are entitled to coverage under the St. Paul commercial automobile policy. However, I would find that only Mrs. Dalton is covered under the same. As the majority notes in its opinion, the UM/UIM provisions in the St. Paul automobile policy define an insured as follows: "Individual. You are protected. Also, if you are named in the introduction as an individual, you and your family members are protected." Since Mrs. Dalton is not named in the introduction as a individual, her family members are not covered. Mrs. Dalton is covered because "you" refers to the corporate employer of Mrs. Dalton, and, per Scott-Pontzer, the "you" must include employees to make sense under the UM/UIM coverage which covers bodily injury. Thus, Nikole, Brian and Miranda Dalton and the estate of Jerrold Dalton would not be covered under the St. Paul commercial automobile policy.
{¶ 144} With respect to the St. Paul umbrella policy, I would find that only Mrs. Dalton is covered under the same. The umbrella coverage defines a "protected" person as "[a]ny person or organization who is a protected person under your automobile Basic insurance for the use of an auto is a protected person under this agreement." (Quotation from the majority opinion). Since I would find that Mrs. Dalton, as an employee of the named insured, is a protected person under the commercial auto policy, and I would find that her family members are not, then only Mrs. Dalton is entitled to coverage under the umbrella policy.
{¶ 145} I respectfully dissent from the majority's analysis and disposition of Grange Mutual Casualty's fifth assignment of error. The majority, in its opinion, found coverage to Nikole Dalton under the Grange umbrella policy and the St. Paul policies. On such basis, the majority held that "Grange coverage is pro rata, not primary." However, under my analysis, Nikole is only covered under the Grange umbrella policy. Thus, there is no pro rata coverage. For such reason, I would overrule Grange's fifth assignment of error in part.
 JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, the judgment in Case No. 2001CA00380 is reversed. The judgment in Case No. 2001CA00393 is affirmed in part and reversed in part. The judgment in Case No. 2001CA00407 is affirmed. The judgment in Case No. 2001CA00409 is affirmed. Costs in Case No. 2001CA00393 to be paid by Grange Mutual Casualty Company.