OPINION
{¶ 1} Appellants Vernon McDonald, Individually and as Administrator of the Estate of John McDonald ("appellants") appeal the decision of the Tuscarawas County Court of Common Pleas concerning the issue of coverage under policies issued by Cincinnati Insurance Company ("Cincinnati") and Indiana Insurance Company ("Indiana"), the issue of judgment in the full amount against Cincinnati and the issue of prejudgment interest. The following facts give rise to this appeal.
 {¶ 2} The accident giving rise to this lawsuit occurred on March 11, 1998, when John McDonald was killed while riding as a passenger in a vehicle operated by James Warner, Jr. The Estate of John McDonald settled with the tortfeasor's liability insurer for the liability limit of $25,000. In addition, the estate also received $75,000 in UIM benefits from State Farm, the personal auto insurer for Vernon McDonald.
 {¶ 3} Following receipt of these proceeds, appellants made UIM claims, for additional UIM benefits, from Cincinnati, Federal Insurance Company ("Federal") and Indiana. Appellants requested arbitration of their claims. The basis for these Scott-Pontzer[1] claims are as follows. First, appellants presented a UIM claim under a business auto policy and an umbrella policy Cincinnati issued to the decedent's employer, Hicks Roofing, Inc. ("Hicks"). The auto policy provides express UM/UIM coverage in the limit amount of $1 million. The umbrella policy provides UIM coverage in the limit amount of $4 million, by operation of law, because Cincinnati did not have a valid and enforceable written offer and rejection or reduction of UIM coverage.
 {¶ 4} Second, appellants presented a UIM claim against Vernon McDonald's employer, Greer Industries, Inc., under a business auto policy and an umbrella policy issued by Federal. The auto policy provides $1 million in express UM/UIM coverage. The umbrella policy provides $20 million in UIM coverage, by operation of law, because Federal did not have a valid and enforceable written offer and rejection or reduction of UIM coverage.
 {¶ 5} Third, Appellant Lori Scott, the decedent's sister, who did not live with the decedent and their parents, presented a UIM claim under a business auto policy Indiana issued to Scott's employer, Courthouse Café Properties, Ltd. Indiana's auto policy provides express UM/UIM coverage in the limit amount of $1 million.
 {¶ 6} Pursuant to appellants' request, this matter proceeded to arbitration. On September 19, 2001, a unanimous arbitration panel determined the total damages for the wrongful death of John McDonald was $1,800,000 and that the decedent was guilty of fifteen percent comparative negligence. Thus, the panel of arbitrators reduced the award, by fifteen percent, to $1,530,000. The arbitration panel distributed the proceeds as follows: $680,000 to decedent's father, Vernon McDonald; $680,000 to decedent's mother, Marla McDonald; $85,000 to decedent's sister, Lori Scott; and $85,000 to decedent's sister, Holly Lehigh.
 {¶ 7} Thereafter, the trial court reduced the arbitration award, by $100,000, in order to set off the $25,000 received from the tortfeasor's insurer and $75,000 received from the decedent's personal insurer. On December 3, 2001, Indiana filed a complaint, in the Stark County Court of Common Pleas, seeking a declaratory judgment against Farmers Insurance of Columbus, Inc. ("Farmers")[2], Federal, Cincinnati, Appellant Vernon McDonald, Individually and as Administrator of the Estate of John McDonald and Lori Scott. Indiana sought a declaration that its policy, issued to Lori Scott's employer, provided only excess coverage for Appellant Scott's wrongful death damages caused by her brother's death. Indiana claimed the other insurance policies issued by Cincinnati, Federal and Farmers provided primary coverage to any coverage provided by Indiana.
 {¶ 8} On December 17, 2001, in the lawsuit filed by Indiana, appellants moved to confirm the arbitration award and reduce the award to judgment against Federal, Indiana and Cincinnati. Appellants also filed a motion for prejudgment interest. On January 11, 2002, Indiana moved for summary judgment against Cincinnati and Federal claiming Cincinnati and Federal provided primary coverage to the decedent and his estate. Indiana argued its insured, Appellant Scott, would be fully compensated by virtue of a distribution of her share of the wrongful death proceeds as a beneficiary of her brother's estate, for which Cincinnati and Federal provided primary coverage. Thus, Indiana maintained that it owed no UIM benefits to Appellant Scott.
 {¶ 9} On January 16, 2002, Farmers moved to transfer venue to Tuscarawas County. On January 18, 2002, Federal filed a brief in opposition to the motion to reduce the arbitration award to judgment and opposed appellants' motion for prejudgment interest. Federal also filed a cross-motion for summary judgment on the issue of coverage under its two policies issued to Greer. On January 31, 2002, Cincinnati filed an amended answer and cross-claim, against Federal, claiming that Federal afforded coverage on a pro rata basis with Cincinnati.
 {¶ 10} Subsequently, on March 19, 2002, the Stark County Court of Common Pleas transferred this matter to the Tuscarawas County Court of Common Pleas. On October 16, 2002, the trial court granted appellants' motion for summary judgment against Federal and denied Federal's cross-motion for summary judgment. The trial court also determined the decedent did not qualify as an insured under Cincinnati's umbrella policy issued to the decedent's employer, Hicks, and therefore, the decedent's estate was not entitled to UIM benefits under Cincinnati's umbrella policy.
 {¶ 11} As to Indiana's auto policy, the trial court concluded Appellant Lori Scott was not entitled to insurance proceeds under Indiana's auto policy and granted Indiana's motion for summary judgment because there existed sufficient UIM insurance coverage payable to the McDonald Estate from the Federal and Cincinnati policies. Finally, the trial court awarded prejudgment interest from the date of the arbitrators' award.
 {¶ 12} Appellants timely filed a notice of appeal and set forth the following assignments of error for our consideration:
 {¶ 13} "I. THE TRIAL COURT ERRED IN GRANTING DEFENDANT CINCINNATI'S MOTION FOR SUMMARY JUDGMENT AND SPECIFICALLY IN RULING THAT JOHN MCDONALD DID NOT QUALIFY AS AN INSURED UNDER CINCINNATI'S UMBRELLA POLICY AND THUS HIS ESTATE WAS NOT ENTITLED TO RECEIVE UNDERINSURED MOTORIST BENEFITS FROM CINCINNATI'S UMBRELLA POLICY.
 {¶ 14} "II. IN THE ALTERNATIVE, THE TRIAL COURT ERRED IN FAILING TO RULE THAT ONCE CINCINNATI AGREED TO BINDING ARBITRATION WITH RESPECT TO ITS POLICIES, THIS AGREEMENT TO ARBITRATE CONSTITUTED A WAIVER OF ALL COVERAGE ISSUES.
 {¶ 15} "III. THE TRIAL COURT ERRED IN NOT GRANTING THE ESTATE OF JOHN MCDONALD JUDGMENT IN THE FULL AMOUNT AS AGAINST APPELLEE CINCINNATI.
 {¶ 16} "IV. THE TRIAL COURT ERRED IN SUSTAINING APPELLEE INDIANA INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT AND SPECIFICALLY IN HOLDING THAT APPELLANT LORI SCOTT, IN HER INDIVIDUAL CAPACITY, WAS NOT ENTITLED TO RECOVER THE UIM BENEFITS OWED TO HER FROM THE INDIANA INSURANCE COMPANY COMMERCIAL AUTO POLICY.
 {¶ 17} "V. THE TRIAL COURT ERRED IN NOT AWARDING PREJUDGMENT INTEREST IN THE CASE AT BAR."
 "Summary Judgment Standard" {¶ 18} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party, Inc. (1987),30 Ohio St.3d 35, 36. As such, we must refer to Civ.R. 56 which provides, in pertinent part:
 {¶ 19} "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor."
 {¶ 20} Pursuant to the above rule, a trial court may not enter summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the non-moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. Vahila v. Hall, 77 Ohio St.3d 421, 429, 1997-Ohio-259, citing Dresher v. Burt, 75 Ohio St.3d 280, 1996-Ohio-107.
 {¶ 21} It is based upon this standard that we review appellants' assignments of error.
 I {¶ 22} In their First Assignment of Error, appellants maintain the trial court erred when it granted Cincinnati's motion for summary judgment on the basis that the decedent, John McDonald, did not qualify as an insured under Cincinnati's umbrella policy and therefore, his estate was not entitled to receive UIM benefits from said policy.
 {¶ 23} In its judgment entry, the trial court concluded as follows, as it pertains to coverage under Cincinnati's umbrella policy:
 {¶ 24} "7. The Cincinnati Insurance Company umbrella policy issued to Hicks Roofing, Inc. does not define `insured' by the means of language determined to be ambiguous in Scott-Pontzer, supra. The Cincinnati Insurance Company umbrella policy includes employees of the named insured in the definition of `insured' but only `while acting within the scope of their duties as such.' Therefore, because it is undisputed that the decedent was not acting in any connection with his duties as an employee of Hicks Roofing, Inc., at the time of the accident in question and, his resultant death, the Cincinnati Insurance Company umbrella policy does not provide excess coverage in this case. * * * Lastly, the uninsured/underinsured motorists coverage was expressly rejected under the Cincinnati Insurance Company umbrella policy." Judgment Entry, Oct. 16, 2002, at 6-7.
 {¶ 25} Appellants set forth two arguments in support of this assignment of error. First, appellants contend UIM coverage, in the limit amount of $4,000,000, arises under Cincinnati's umbrella policy, by operation of law, pursuant to the Ohio Supreme Court's decision in Linkov. Indemn. Ins. Co. of N. Am., 90 Ohio St.3d 445, 2000-Ohio-92. Appellants maintain that because Cincinnati's umbrella policy provides automobile liability coverage in excess of the underlying Cincinnati commercial auto policy, the umbrella policy was subject to the mandatory offering requirements of R.C. 3937.18.
 {¶ 26} We agree with this argument based upon the language of Cincinnati's umbrella policy. This language provides:
 {¶ 27} "We will pay on behalf of the insured the `ultimate net loss' which the insured is legally obligated to pay as damages in excessof `underlying insurance' or for an `occurrence covered' by this policy which is either excluded or not covered by `underlying insurance' because of:
 {¶ 28} "1. `Bodily injury' or `property damage' covered by this policy occurring during the policy period and caused by an `occurrence' or; * * * Section I(A) — Coverages, at 1. (Emphasis sic.)
 "* * *" {¶ 29} Clearly, Cincinnati's umbrella policy provides excess coverage for the commercial auto policy it issued to Hicks Roofing, Inc.[3] Therefore, Cincinnati was required to offer UM/UIM coverage when it issued the umbrella policy to Hicks. The record indicates Cincinnati did offer excess uninsured motorist coverage, however, a representative from Hicks rejected such coverage. The Linko case requires that in making a written offer, the insurer must inform the insured of the availability of UM/UIM coverage, set forth the premium, describe the coverage and state the coverage limits. Id. at 449. Failure to do so results in UM/UIM coverage arising by operation of law.
 {¶ 30} Upon reviewing the "Application For Excess Uninsured Motorist Coverage," wherein a representative of Hicks rejected excess uninsured motorists coverage under the umbrella policy, we conclude UM/UIM coverage arises by operation of law because the rejection fails to meet the requirements of Linko. Specifically, the application fails to set forth the premium for UM/UIM coverage, describe the coverage or state the coverage limits. Accordingly, we find the trial court erred when it determined Hicks rejected UM/UIM coverage. Thus, Cincinnati's umbrella policy must provide UM/UIM coverage in the limit amount of $4,000,000.
 {¶ 31} Appellants next maintain that based upon the Scott-Pontzer
decision, the decedent, as an employee of Hicks, is a UIM insured under Cincinnati's umbrella policy and therefore, his estate is entitled to receive UIM benefits. As noted above, the trial court concluded the decedent was not an insured under the umbrella policy because he was not acting within the scope of his employment at the time of the accident. We find the Scott-Pontzer decision dispositive of this issue. InScott-Pontzer, the Court specifically addressed an umbrella/excess policy, which contained scope of employment language in its definition of "insured," wherein UM/UIM coverage arose by operation of law. The Court stated as follows:
 {¶ 32} "On the other hand, Liberty Mutual's umbrella/excess insurance policy did restrict coverage to employees acting within the scope of their employment. However, we have already found that Liberty Mutual had failed to offer underinsured motorist coverage through the umbrella policy issued to Superior Dairy. Thus, any language in the Liberty Mutual umbrella policy restricting insurance coverage was intended to apply solely to excess liability coverage and not for purposes of underinsured motorist coverage. * * * As such there is no requirement in the umbrella policy that Pontzer had to be acting during the scope of his employment to qualify for underinsured motorist coverage. Therefore, appellant is entitled to underinsured motorist benefits under the Liberty Mutual umbrella policy as well."Scott-Pontzer at 666.
 {¶ 33} We have followed the Scott-Pontzer decision in finding that an employee is entitled to UM/UIM coverage, as a matter of law, under a corporate umbrella policy which affords UM/UIM coverage by operation of law. See Tulak v. Meridian Ins. Co., Tuscarawas App. No. 2002 AP 11 0088, 2003-Ohio-4139; Griffith v. Buckeye Union Ins. Co., Stark App. No. 2001CA00410, 2003-Ohio-3799; Akron Gen. Med. Ctr. v. James, Holmes App. No. 2002CA009; 2003-Ohio-3957; Morrison v. Emerson, Stark App. No. 2002CA00414, 2003-Ohio-2708; Greene v. Westfield Ins. Co., Stark App. No. 2002CA00114, 2002-Ohio-6179; Morgenstern v. Cincinnati Ins. Co.,148 Ohio App.3d 652, 2002-Ohio-4049; Butcher v. Lewis, Stark App. No. 2001CA00219, 2002-Ohio-1858; Rohr v. The Cincinnati Ins. Co., Stark App. No. 2001CA00237; 2002-Ohio-1583.
 {¶ 34} Accordingly, we conclude UM/UIM coverage arises by operation of law under Cincinnati's umbrella policy issued to Hicks. We further find the decedent qualifies as an insured under the umbrella policy even though he was not within the scope of his employment at the time of the accident. Therefore, the decedent's estate is entitled to UIM benefits under Cincinnati's umbrella policy.
 {¶ 35} Appellants' First Assignment of Error is sustained.
 II {¶ 36} In their Second Assignment of Error, appellants contend the trial court erred when it failed to determine that once Cincinnati agreed to binding arbitration with respect to its policies, the agreement to arbitrate constituted a waiver of all coverage issues. We will not address the merits of this assignment of error having determined that coverage exists under Cincinnati's umbrella policy.
 {¶ 37} Appellants' Second Assignment of Error is overruled as moot.
 III {¶ 38} Appellants maintain, in their Third Assignment of Error, the trial court erred when it failed to grant the Estate of John McDonald judgment in full against Cincinnati. We disagree.
 {¶ 39} In support of this argument, appellants cite the Ohio Supreme Court's decision in Goodyear Tire Rubber Co. v. Aetna Cas. Sur. Co., 95 Ohio St.3d 512, 2002-Ohio-2842. The Goodyear case involves a lawsuit filed by Goodyear Tire Rubber Company against Aetna Casualty Surety Company and several other insurance companies. Id. at ¶ 1. Goodyear sought declaratory judgments concerning insurance claims for pollution cleanup costs at twenty-two sites. Id.
 {¶ 40} One of several issues the Ohio Supreme Court addressed on appeal concerned the issue of allocation of coverage. The Court decided to adopt the "all sums" approach of allocation which "* * * permits the policyholder to seek coverage from any policy in effect during the time period of injury or damage." Id. at ¶ 6. "The `all sums' approach allows Goodyear to seek full coverage for its claims from any single policy, up to that policy's coverage limits, out of the group of policies that has been triggered." Id.
 {¶ 41} In adopting the "all-sums" approach, the Court held:
 {¶ 42} "1. When a continuous occurrence of environmental pollution triggers claims under multiple primary insurance policies, the insured is entitled to secure coverage from a single policy of its choice that covers `all sums' incurred as damages `during the policy period,' subject to that policy's limit of coverage." Id. at paragraph one of the syllabus.
 {¶ 43} We find appellants' reliance on the Goodyear case misplaced for two reasons. First, as the Court noted in the Goodyear case, "[t]he issue of allocation arises in situations involving long-term injury or damage, such as environmental cleanup claims where it is difficult to determine which insurer must bear the loss." Id. at ¶ 5. The case sub judice does not involve a long-term injury or damages. Rather, it involves an auto accident and based upon the policies at issue and the language contained in those policies, it is relatively easy to determine who must bear the loss.
 {¶ 44} Further, the Ohio Supreme Court specifically noted, in the Goodyear case, that:
 {¶ 45} "The starting point to determining the scope of coverage is the language of the insurance policies.
 "* * * {¶ 46} "It is well settled that `insurance policies' should be enforced in accordance with their terms as are other written contracts. Where the provisions of the policy are clear and unambiguous, courts cannot enlarge the contract by implication so as to embrace an object distinct from that originally contemplated by the parties." Id. at ¶ 7, ¶ 8.
 {¶ 47} Second, unlike the policy in Goodyear that indicated it would cover all sums incurred as damages for injury during the policy period, Cincinnati's business auto policy specifically provides that, "[o]ur share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage on" either a primary or excess basis. See Ohio Uninsured Motorists Coverage — Bodily Injury Endorsement at page 2. Also, Cincinnati's umbrella policy provides solely excess coverage and does not prorate if other insurance applies to the claim. See Cincinnati's Umbrella Policy, Form at page 10.
 {¶ 48} Therefore, we decline to adopt the "all sums" approach, in cases involving motor vehicle policies of insurance, as we find this is not the type of case in which the Ohio Supreme Court contemplated the use of the "all sums" approach for purposes of allocation. Accordingly, the trial court did not err when it denied appellants' request to grant the decedent's estate judgment in the full amount against Cincinnati.
 {¶ 49} Appellants' Third Assignment of Error is overruled.
 IV {¶ 50} Appellants contend, in their Fourth Assignment of Error, the trial court erred when it sustained Indiana's motion for summary judgment and concluded Appellant Lori Scott, in her individual capacity, is not entitled to recover UIM benefits under Indiana's auto policy issued to Appellant Scott's employer, Courthouse Café Properties, Ltd. Instead, appellants maintain the trial court should have ruled that she is entitled to recover the sum of $85,000 from any one or more of the insurance carriers obligated to her.
 {¶ 51} Appellants argue that in the event it is determined that Federal's business auto policy and umbrella policy do not provide coverage to the Estate of John McDonald, Appellant Lori Scott would not be entitled to collect her entire arbitration award or any balance thereof from Indiana even though Indiana admits she is a UIM insured under its auto policy.
 {¶ 52} We find this assignment of error moot since we determined in Indiana Ins. Co. v. Farmers Ins. of Columbus, Tuscarawas App. No. 2002 AP 11 0089, that Federal's auto and umbrella policies provide coverage to the Estate of John McDonald. Further, in the case sub judice, we determined, in appellants' First Assignment of Error, that the Estate of John McDonald is entitled to UIM coverage under Cincinnati's umbrella policy. Therefore, the trial court did not err when it granted Indiana's motion for summary judgment.
 {¶ 53} Appellants' Fourth Assignment of Error is overruled.
 V {¶ 54} In their Fifth Assignment of Error, appellants maintain the trial court erred in not awarding prejudgment interest against Cincinnati and Indiana.[4] We agree as it pertains to Cincinnati.
 {¶ 55} An appellate court's review of a trial court's award of prejudgment interest is governed by an abuse of discretion standard.Landis v. Grange Mut. Ins. Co., 82 Ohio St.3d 339, 1998-Ohio-387. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,219.
 {¶ 56} In its judgment entry, the trial court concluded as follows:
 {¶ 57} "* * * Because the arbitrators' award was not reduced to present value in any fashion, the Court concludes that the arbitrators' award provides full compensation, calculated as of 9/19/2001/, for any and all past, present, or future damages and, thus, an award of prejudgment interest thereon is neither justified nor required to make the claimants whole." Judgment Entry, Oct. 16, 2002, at 7.
 {¶ 58} R.C. 1343.03(A) governs the award of prejudgment interest. This statute provides as follows:
 {¶ 59} "(A) In cases other than those provided for in sections1343.01 and 1343.02 of the Revised Code, when money becomes due and payable upon any bond, bill, note, or other instrument of writing, upon any book account, upon any settlement between parties, upon all verbal contracts entered into, and upon all judgment, decrees, and order of any judicial tribunal for the payment of money arising out of tortuous conduct or a contract or other transaction, the creditor is entitled tointerest at the rate of ten per cent per annum, and no more, unless a written contract provides a different rate of interest in relation to the money that becomes due and payable, in which case the creditor is entitled to interest at the rate provided in that contract." (Emphasis added.)
 {¶ 60} We find the General Assembly's use of the phrase "creditor is entitled to interest" is mandatory language which requires the trial court to award prejudgment interest. See Pioneer Rural Elec. Co-Op v.Strunk, Shelby App. No. 17-99-09, 1999-Ohio-939; Dwyer Elec., Inc. v.Confederated Builders, Inc. (Oct. 29, 1998), Crawford App. No. 3-98-18. In Dwyer, the Third District Court of Appeals explained:
 {¶ 61} "[T]he plain language of R.C. 1343.03(A) states in no uncertain terms that when money is due and payable on a written instrument or on a judgment for payment of money based on a contract, `the creditor is entitled to interest.' The statute references no predicate determinations which need to be made before a creditor will be entitled to interest. Thus, once a party has a judgment for an underlying contract claim, as in this case, we find that he is entitled to interest as a matter of law. * * * R.C. 1343.03(A) reposes no discretion in the trial court * * *. When the liability issue was determined in the plaintiffs' favor, they were then entitled to prejudgment interest pursuant to the statute." (Emphasis sic.) Id. at 2.
 {¶ 62} Based upon the above interpretation of R.C. 1343.03(A), the trial court abused its discretion when it determined appellants were not entitled to prejudgment interest on the basis that the arbitrators' award provided full compensation for their injuries. Upon remand, the trial court may use its discretion to determine the date money became "due and payable" upon Cincinnati's policies. The trial court is required to make this determination pursuant to the Ohio Supreme Court's decision in Landis.
 {¶ 63} In Landis, the Ohio Supreme Court addressed the issue of prejudgment interest in a case involving a claim for underinsured motorists coverage. Plaintiffs' claim was submitted to arbitration and plaintiffs received an award of $1,300,000. Id. at 339. Thereafter, plaintiffs sought recovery of prejudgment interest. On appeal to the Ohio Supreme Court, the Court first determined that plaintiffs were entitled to recover prejudgment interest under R.C. 1343.03(A). Id. at 341. The Court also specifically found that, "[a] determination that the benefits became due and payable upon the entry of the arbitrator's award would, in this case, work an injustice by rewarding Grange for improperly denying benefits." Id. at 341-342.
 {¶ 64} "Whether prejudgment interest in this case should be calculated from the date coverage was demanded or denied, from the date of the accident, from the date at which arbitration of damages would have ended if Grange had not denied benefits, or some other time based on when Grange should have paid Landis is for the trial court to determine. Upon reaching that determination, the court should calculate, pursuant to R.C. 1343.03(A), the amount of prejudgment interest due Landis and enter an appropriate order." Id. at 342.
 {¶ 65} Pursuant to the Landis decision, we conclude the trial court abused its discretion when it awarded prejudgment interest from the date of the entry of the arbitrators' award. Therefore, we remand this matter, to the trial court, for the court to determine, according to Landis, the date money became "due and payable" upon Cincinnati's policies.
 {¶ 66} Appellants' Fifth Assignment of Error is sustained.
 {¶ 67} For the foregoing reasons, the judgment of the Court of Common Pleas, Tuscarawas County, Ohio, is hereby affirmed in part, reversed in part and remanded for further proceedings consistent with this opinion.
By: Wise, J., Boggins, J., concurs.
[1] Scott-Pontzer v. Liberty Mut. Fire Ins. Co., 85 Ohio St.3d 660,1999-Ohio-292.
[2] Farmers is Appellant Lori Scott's personal carrier.
[3] The trial court record indicates Cincinnati previously acknowledged coverage under the UM/UIM endorsement to the commercial auto policy issued to the decedent's employer, Hicks Roofing, Inc.
[4] Appellant Lori Scott is not entitled to prejudgment interest against Indiana because Indiana does not owe her UIM coverage as she is fully compensated under the policies of insurance issued by Federal and Cincinnati.