OPINION
{¶ 1} Defendant-appellant Westfield Insurance Company (hereinafter "defendant") appeals from the decision and judgment entry of the Franklin County Court of Common Pleas denying summary judgment in its favor and granting summary judgment in favor of plaintiff-appellee Victoria A. Campbell (hereinafter "plaintiff"). For the reasons which follow, we affirm the judgment of the trial court.
 {¶ 2} On November 4, 1999, plaintiff was seriously injured in an automobile accident with an uninsured driver. At the time of the accident, she was an employee of Putnam Transportation Insurance Agency.
 {¶ 3} Putnam Transportation Insurance Agency and its affiliate, Putnam Insurance Agency (hereinafter collectively "Putnam Agency"), are owned by Charles L. Putnam. In 1993, Mr. Putnam obtained an automobile insurance policy (hereinafter "policy") from defendant for the Putnam Agency. The policy was first issued to the Putnam Agency on June 4, 1993. It provided $1,000,000 in primary uninsured/underinsured (hereinafter "UM/UIM") coverage under a Commercial Auto Coverage Form (hereinafter "primary") and $2,000,000 in excess UM/UIM coverage under a Commercial Umbrella Coverage Form (hereinafter "umbrella"). Mr. Putnam kept this coverage for two years.
 {¶ 4} In 1995, Mr. Putnam determined the UM/UIM coverage provided by the umbrella was neither needed nor worth its cost. As such, in connection with the renewal of the umbrella, he received a form entitled "Commercial Excess Uninsured Motorist (and Underinsured Motorist, where applicable) Election Form" (hereinafter "offer and election form"). As the contents of the offer and election form are crucial to the resolution of this dispute, its entire contents are set forth:
I (We), the undersigned, hereby request (in connection with the above policy and renewals or replacements thereof issued by Ohio Farmers Insurance Company or [defendant]) the following option for Uninsured Motorist Insurance (and where applicable, Underinsured Motorists Insurance).
(Check One)
The limit of liability indicated below: (cannot be greater than the limit of liability afforded by the commercial excess coverage)
$1,000,000
$2,000,000
$3,000,000
$4,000,000
$5,000,000
Reject all Uninsured Motorist Coverage (and where applicable, Underinsured Motorist Coverage).
 {¶ 5} On May 10, 1995, Mr. Putnam marked the box in front of the line rejecting UM/UIM coverage and signed the offer and election form (hereinafter "1995 rejection").[1]
 {¶ 6} After the 1995 rejection, the umbrella was renewed in 1995, 1996 and 1997. It was again renewed on June 4, 1998 and was in effect at the time of plaintiff's accident. Defendant never offered UM/UIM coverage under the umbrella with the 1996, 1997 and 1998 renewals.
 {¶ 7} After her accident, plaintiff claimed coverage under the primary and umbrella portions of the policy. Defendant acknowledged coverage for plaintiff's injuries under the primary, but denied coverage under the umbrella.
 {¶ 8} On November 2, 2001, plaintiff filed a declaratory judgment action against defendant. Specifically, plaintiff sought a declaration defendant failed to meet the requirements under Ohio law for a valid offer of UM/UIM coverage, thereby invalidating the 1995 rejection and permitting plaintiff to receive the benefits of the $2,000,000 in excess UM/UIM coverage under the umbrella. Plaintiff filed a motion for summary judgment seeking this declaration. Defendant also filed a motion for summary judgment seeking a determination the offer and 1995 rejection were valid and in conformity with Ohio law. On November 4, 2002, the trial court sustained plaintiff's motion for summary judgment and denied defendant's motion for summary judgment. The trial court concluded defendant did not make a valid offer under Ohio law. As such, the 1995 rejection was invalid and plaintiff was entitled to UM/UIM coverage under the umbrella. Defendant timely filed the instant appeal.
 {¶ 9} Defendant asserts the following assignment of error:
The Trial Court erred in: 1) Granting Plaintiff-Appellee's Motion for Summary Judgment determining that Plaintiff-Appellee is entitled to excess insurance coverage under Defendant-Appellant Westfield Insurance Company's Policy No. CWP3-575-09 where it is undisputed that an insured knowingly, voluntarily, and intelligently rejected UM/UIM coverage in writing; and 2) Denying Defendant-Appellant Westfield Insurance Company's Motion for Summary Judgment, and refusing to enforce the written rejection of coverage by an insured that was presumptively valid, where Plaintiff-Appellee offered no evidence rebutting such presumption."
 {¶ 10} Appellate review of summary judgment motions is de novo. Helton v. Scioto Cty. Bd. of Commrs. (1997), 123 Ohio App.3d 158, 162. "When reviewing a trial court's ruling on summary judgment, the court of appeals conducts an independent review of the record and stands in the shoes of the trial court." Mergenthal v. Star Banc Corp. (1997),122 Ohio App.3d 100, 103. Civ.R. 56(C) provides that summary judgment may be granted when the moving party demonstrates the following: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. State ex rel. Grady v. State Emp. Relations Bd. (1997), 78 Ohio St.3d 181, 183. In the summary judgment context, a "material" fact is one that might affect the outcome of the suit under the applicable substantive law. Turner v. Turner (1993),67 Ohio St.3d 337, 340. When determining what is a "genuine issue," the court decides if the evidence presents a sufficient disagreement between the parties' positions. Id.
 {¶ 11} Further, when a motion for summary judgment has been supported by proper evidence, the nonmoving party may not rest on the mere allegations of the pleading, but must set forth specific facts, by affidavit or otherwise, demonstrating that there is a genuine triable issue. Jackson v. Alert Fire Safety Equip., Inc. (1991),58 Ohio St.3d 48, 52. If the nonmoving party does not demonstrate a genuine triable issue, summary judgment shall be entered against that party. Civ.R. 56(E).
 {¶ 12} At issue is the application of R.C. 3937.18, which requires the offering of UM/UIM coverage. Over the past few years, R.C. 3937.18
has been amended frequently and the subject of numerous court decisions. However, one constant of R.C. 3937.18 has been its prohibition on insurers issuing a policy of automobile liability insurance without first offering the insured UM/UIM coverage in an amount equal to the amount of liability coverage. R.C. 3937.18(A). The failure of an insurer to do so results in the insured acquiring UM/UIM coverage by operation of law. Gyori v. Johnston Coca-Cola Bottling Group, Inc. (1996), 76 Ohio St.3d 565,567, citing Abate v. Pioneer Mut. Cas. Co. (1970), 22 Ohio St.2d 161,163. "The mandates of R.C. 3937.18 apply to providers of excess coverage as well as providers of primary liability coverage" Id., citing Duriak v. Globe Am. Cas. Co. (1986), 28 Ohio St.3d 70, 72.
 {¶ 13} Of the various versions of R.C. 3937.18, two are central to the issues presented in this appeal. The first, enacted by S.B. No. 20 (hereinafter "SB 20"), took effect October 24, 1994. Under SB 20, R.C.3937.18(C) (hereinafter "SB 20 R.C. 3937.18[C]") stated, in relevant part:
The named insured may only reject or accept [UM/UIM] coverages offered under division (A) of this section. The named insured may require the issuance of [UM/UIM] coverages for bodily injury or death in accordance with a schedule of optional lesser amounts approved by the superintendent * * *. Unless the named insured requests such coverages in writing, such coverages need not be provided in or supplemental to a renewal policy where the named insured has rejected the coverages in connection with a policy previously issued to him by the same insurer. * * *
 {¶ 14} Two seminal cases clarifying the offer and rejection requirement of SB 20 R.C. 3937.18(C) are Gyori, supra, and Linko v. Indemn. Ins. Co. of N. Am. (2000), 90 Ohio St.3d 445. In Gyori, the Ohio Supreme Court held "[t]here can be no rejection pursuant to R.C. 3937.18(C) absent a written offer of uninsured motorist coverage from the insurance provider." Id. at paragraph one of the syllabus. In discussing Gyori, the Linko court stated at 449 that "Gyori stands for the proposition that we cannot know whether an insured has made an express, knowing rejection of UIM coverage unless there is a written offer and written rejection. It only follows that a valid rejection requires a meaningful offer, i.e., an offer that is an offer in substance and not just in name." The Linko court proceeded to expound upon what is necessary for a written offer to be meaningful. Specifically, the written offer must contain a brief description of the coverage, the premium for the coverage and an express statement of the UM/UIM coverage limits. Id.
 {¶ 15} The second version of R.C. 3937.18, enacted by H.B. No. 261 (hereinafter "HB 261") was effective September 20, 1997. R.C. 3937.18(C) under HB 261 (hereinafter "HB 261 R.C. 3937.18[C]") provided, in part:
* * * A named insured's or applicant's rejection of both [UM/UIM] coverages as offered under division (A) of this section * * * shall be in writing and shall be signed by the named insured or applicant. A named insured's or applicant's written, signed rejection of both [UM/UIM] coverages as offered under division (A) of this section, or a named insured's or applicant's written, signed selection of such coverages in accordance with the schedule of limits approved by the superintendent, shall be effective on the day signed, shall create a presumption of an offer of coverages consistent with division (A) of this section, and shall be binding on all other named insureds, insureds, or applicants.
Unless a named insured or applicant requests such coverages in writing, such coverages need not be provided in or made supplemental to a policy renewal or replacement policy where a named insured or applicant has rejected such coverages in connection with a policy previously issued to the named insured or applicant by the same insurer. * * *
 {¶ 16} The presumption established in HB 261 R.C. 3937.18(C) is rebuttable. Pillo v. Stricklin (Jan. 28, 2002), Stark App. No. 2001CA00203, citing Pillo v. Stricklin (Dec. 31, 2001), Stark App. No. 2001CA00204. Moreover, the requirements of a valid offer established by Linko still apply. Kemper v. Michigan Millers Ins. Co., 98 Ohio St.3d 162,2002-Ohio-7101.
 {¶ 17} Finally, to determine the scope of coverage of a UM/UIM claim, "the statutory law in effect at the time of entering into a contract for automobile liability insurance controls the rights and duties of the contracting parties." Ross v. Farmers Ins. Group of Cos. (1998), 82 Ohio St.3d 281, 289.
 {¶ 18} Defendant argues the presumption of HB 261 R.C. 3937.18(C) applies as the accident occurred when the 1998 renewal policy and HB 261 were in effect. Moreover, even though the requirements of Linko apply, the method of proof has changed. After HB 261, extrinsic evidence is admissible to rebut or support the presumption. Therefore, defendant asserts Mr. Putnam's affidavit may be considered by the court to establish a knowing, voluntary and intelligent rejection of UM/UIM coverage in writing. To the contrary, plaintiff offers no evidence to rebut the presumption.
 {¶ 19} Additionally, defendant maintains, if it is not proper to consider extrinsic evidence, Linko does not limit the establishment of the elements to a single document. Instead, a valid offer may be proven through multiple contract documents. To find otherwise flies in the face of established contract law and ignores the realities of this case.
 {¶ 20} Defendant contends an examination of the of the 1993 and 1994 policies contain, in writing, the amount of liability coverage being purchased, the actual description of UM/UIM coverage obtained and the premium costs of the same. Thus, defendant opines every element of Linko was provided to Mr. Putnam prior to the execution of the 1995 rejection.
 {¶ 21} In response, plaintiff maintains the fact HB 261 was in effect at the time of the accident does not alter the application of the Linko requirements. Moreover, defendant was required to offer UM/UIM coverage with every renewal or replacement policy unless the named insured, previously, effectively rejected such coverage. As such, an insurer's ability to not offer UM/UIM coverage hinges on whether the initial offer and rejection is valid. Plaintiff asserts Mr. Putnam's rejection was not valid and, thus, defendant was legally required to offer UM/UIM coverage in the 1998 renewal policy. Further, none of the cases upon which defendant relies analyze whether the initial offer and rejection were valid. Instead, the analysis in each case is premised upon the assumption of a valid offer and rejection. As such, none of those cases are applicable to the facts before us.
 {¶ 22} Further, plaintiff argues any analysis under HB 261 is erroneous. HB 261 contains no provision it is to be applied retroactively. As such, defendant's argument the presumption in HB 261 R.C. 3937.18(C) is applicable in this action has no support in law. Plaintiff asserts defendant's failure to explain how a statute enacted in 1997 can effect a rejection executed in 1995 is telling. Instead, the offer and 1995 rejection must be analyzed under SB 20, Gyori and Linko.
 {¶ 23} Plaintiff contends an analysis of the offer pursuant to SB 20 R.C. 3937.18(C) reveals the Linko requirements are not met. This is true even if the policy documents defendant relies upon are considered.
 {¶ 24} Finally, plaintiff maintains extrinsic evidence is irrelevant and inadmissible. Under Linko the four corners of the insurance agreement control. As such, Mr. Putnam's affidavit, detailing his knowledge and intent, is irrelevant.
 {¶ 25} Our analysis begins with the conclusion that HB 261 does not apply to the dispute currently before us. See Purvis v. Cincinnati Ins. Co., 96 Ohio St.3d 1485, 2002-Ohio-4478. First, the ultimate issue of whether UM/UIM coverage was available under the 1998 renewal policy begins with the determination of whether the offer and 1995 rejection were valid. At that time, SB 20 was the statutory law in effect and dictates the analysis. Ross, supra. Moreover, HB 261 does not provide for its application retroactively and, thus, may only be applied prospectively. State v. LaSalle (2002), 96 Ohio St.3d 178,2002-Ohio-4009, paragraph one of the syllabus. Therefore, the presumption of validity in R.C. 3937.18(C) under HB 261 is not at issue and not available to defendant.
 {¶ 26} In resolving whether defendant provided a valid written offer of UM/UIM coverage which satisfied the requirements of SB 20 and Linko, it must be determined whether the requirements of a valid offer must be contained to a one page document or whether numerous documents may be examined. An examination of Linko results in the conclusion the requirements of a valid offer must be contained within a one page form.[2] The Linko court did not discuss the language or contents of the policy to determine whether the insurer made a valid offer. Instead, the Linko court focused solely on whether the offer and rejection form contained the valid offer requirements. Moreover, mandating the Linko requirements be contained within the offer and rejection form is in accord with the public policy concern motivating Gyori and Linko. Thus, permitting a party to demonstrate compliance with Linko by pointing to various documents, none of which in toto comply, emasculates the policy of an express and knowing rejection.
 {¶ 27} In the instant action, the offer and election form is devoid of any of the Linko requirements. There is no brief description of UM/UIM coverage and neither the premium for that coverage nor the express statement of the UM/UIM coverage limits are contained within the offer and election form. Instead, the sole focus of the offer and election form is on the reduction or rejection of UM/UIM coverage. Accordingly, the offer and election form is not a meaningful offer and Mr. Putnam was unable to make an express and knowing rejection of the UM/UIM coverage.
 {¶ 28} Even if multiple documents may be considered, the offer is still deficient. An examination of the 1995 policy[3] reveals the premium of $224 and the coverage limit of $1,000,000. However, it fails to contain a brief description of UM/UIM coverage.[4] As such, defendant's offer is one in name only and any rejection of UM/UIM coverage which flows from it cannot be valid as it was not expressly and knowingly made.
 {¶ 29} If it were determined the presumption of validity of HB 261 R.C. 3937.18(C) is applicable, the result does not change. The effect of the presumption is to shift to plaintiff the initial burden of producing evidence there was not a valid offer. Edstrom, supra. In analyzing whether an offer is valid under HB 261, the Linko requirements apply. Kemper, supra. Therefore, the analysis set forth above controls and the offer of UM/UIM coverage was not meaningful and any resulting rejection cannot be considered expressly and knowingly made.
 {¶ 30} Additionally, we find defendant's assertion that extrinsic evidence, and specifically Mr. Putnam's assertion in his affidavit he "voluntarily and knowingly signed [the offer and election] form with the intent and expectation that * * * all excess [umbrella] UM/UIM coverage would be deleted for [1995] * * * and all renewals * * *" may be considered to be without merit. (Affidavit of Mr. Putnam at ¶ 6.) In Linko, the court confronted the issue of whether, in determining a valid rejection, the four corners of the insurance agreement controlled or whether the party's intent, established by extrinsic evidence controlled. In concluding the four corners controlled, the Linko court stated:
In Gyori, this court made it clear that the issue of whether coverage was offered and rejected should be apparent from the contract itself. * * * By requiring an offer and rejection to be in writing, this court impliedly held in Gyori that if the rejection is not within the contract, it is not valid. In doing so, this court greatly simplified the issue of proof in these types of cases — the offer and rejection are either there or they are not. Extrinsic evidence is not admissible to prove that a waiver was knowingly and expressly made by each of the named insureds.
Linko, supra, at 343. (Emphasis added.)
 {¶ 31} Therefore, our analysis pursuant to SB 20 clearly prohibits the consideration of Mr. Putnam's affidavit and the specialized knowledge he possesses regarding insurance coverage. Moreover, even if HB 261 dictates our analysis, Linko still controls and the prohibition on extrinsic evidence prevails. Further, even if Mr. Putnam's affidavit is considered, his assertion he voluntarily and knowingly rejected umbrella UM/UIM coverage is meaningless in the absence of a valid offer, which Linko dictates must be, but is not present under these facts.
 {¶ 32} In conclusion, as defendant's offer of UM/UIM coverage in the umbrella portion of the 1995 policy fails to meet the requirements of Linko, the 1995 rejection executed by Mr. Putnam was not valid. Therefore, by operation of law, Mr. Putnam, and by association plaintiff, acquired UM/UIM coverage equaling the amount of liability coverage provided under the umbrella portion of the 1995 policy.
 {¶ 33} Accordingly, defendant's sole assignment of error is hereby overruled and the judgment of the trial court is affirmed.
Judgment affirmed.
PETREE, P.J., and BROWN, J., concur.
[1] Mr. Putnam rejected UM/UIM coverage under the umbrella only. He maintained UM/UIM coverage under the primary.
[2] The majority of courts appear to focus solely on the rejection form executed by the insured. See Purvis, supra; Edstrom v. Smith, Franklin App. No. 01AP-1009, 2002-Ohio-3334; Pillo (2002). However, in Shindollar v. Erie Ins. Co., 148 Ohio App.3d 537, 544, 2002-Ohio-2971, the court considered the contents of the automobile application and rejection form. However, it should be noted the Shindollar court did not examine the policy language.
[3] The examination is limited solely to the 1995 policy as it was the 1995 offer of UM/UIM coverage Mr. Putnam sought to reject.
[4] The offer and rejection form in Edstrom exemplifies a brief description of UM/UIM coverage which complies with Linko. The Edstrom offer and rejection form stated, in pertinent part:
Uninsured Motorist Coverage (U.M.) provides protection against owners or operators of uninsured motor vehicles. An uninsured motor vehicle is (1) not covered by some form of liability insurance coverage or (2) operated by a hit-and-run driver.
Underinsured Motorist Coverage (U.I.) provides protection against owners or operators of at-fault underinsured motor vehicles. An underinsured motor vehicle is covered by some form of liability insurance, but that liability insurance coverage is not sufficient to full compensate you for your damages.
(Elective Options Form, Exhibit to defendant Universal Underwriters Insurance Co. September 2, 2001 Motion for Partial Summary Judgment and Memorandum Contra.)